**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Respondent.**

**No. 14158.**

United States Court of Appeals Seventh Circuit.

Nov. 20, 1963.

--------♦--------

Marcel Mallet-Prevost, Asst. Gen. Counsel, Jules H. Gordon, Atty., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Melvin Pollack, Atty., N. L. R. B., for petitioner.

Thomas L. Cochran, Sorling, Catron & Hardin, Springfield, Ill., for respondent.

Before HASTINGS, Chief Judge, and DUFFY and KNOCH, Circuit Judges.

HASTINGS, Chief Judge.

This case is before us for review on petition of National Labor Relations Board for enforcement of its order issued November 29, 1962 against respondent Central Illinois Public Service Company.

The Board's decision and order are reported at 139 N.L.R.B. 1407 (1962).

Respondent is engaged in the business of furnishing electricity and gas as a public utility service to consumers in central and southern Illinois.

The Board found that respondent violated § 8(a) (5) and (1) of the National Labor Relations Act, 29 U.S.C.A. § 158 (a) (5) and (1), by unilaterally discontinuing a discount in the price of gas sold to its employees who used gas for space heating.

The Board's order requires respondent to cease and desist from unilaterally changing conditions of employment, and from in any like or related manner infringing upon its employees' rights under the Act. Affirmatively, the order requires respondent to make whole the eligible employees from any loss suffered by reason of the termination of the gas discount for the period from September 15, 1961 to February 20, 1962, including the payment of interest thereon at the rate of 6% per annum.

The primary questions presented for decision are whether the Board properly found that respondent unilaterally discontinued its employee gas discount in violation of § 8(a) (5) and (1) of the Act, and whether the Board's order awarding compensation and interest is valid.

Respondent raises several collateral issues which we shall discuss later.

Respondent, from about 1925 until September 15, 1961, granted a 33⅓% discount in the price of gas sold to its employees who used gas for space heating.

Respondent's employees in its Eastern Division have been represented by the union since 1945. Union and respondent have entered into successive collective bargaining contracts since that date. None of the contracts has expressly referred to the gas discount. However, respondent, in comparing the wages of its Eastern Division employees with the wages of its other employees, occasionally stated that the gas discount benefits should not be ignored.

In May, 1961, both parties served notice that they wished to modify in certain specific details the existing contract due to expire June 30, 1961. The notices did not refer to the gas price discount and neither party mentioned it at the several negotiating sessions held before August 15, 1961.

On August 14, 1961, respondent decided to discontinue the gas price discount to its employees. Respondent was advised by its attorney that it was obligated to bargain with the union concerning the discontinuance. However, on August 15, respondent filed a revised rate schedule with the Illinois Commerce Commission stating in effect that on September 15, 1961, the price discount to its employees, except retired employees, would be discontinued. Also on August 15, respondent distributed a bulletin to all its Eastern Division employees announcing the gas discount would be discontinued on September 15, 1961.

Respondent did not officially or formally notify the union or attempt to bargain with it concerning the discontinuance.

On August 25, J. O. Jones, the union's business manager, wrote K. E. Bowen, respondent's Eastern Division manager, that he had been informed of the intended gas discount discontinuance. Jones stated that respondent's conduct was improperly unilateral and in "violation of the policy and application of the labor agreement." He concluded his letter, "We will be glad to discuss this matter with you at your earliest convenience."

Respondent did not acknowledge or answer Jones' letter. On September 11, Jones again wrote Bowen and requested Bowen's views concerning the intended discontinuance. Bowen answered on September 13 by sending a copy of the bulletin respondent had previously distributed to its employees. Bowen stated in the letter, "I believe you will find our views set forth therein."

On September 15, the discontinuance of the gas discount automatically became effective under the revised rate schedule which respondent had filed with the Illinois Commerce Commission.

The union continued to protest the discontinuance and requested that respondent restore the discount or negotiate the matter. Respondent agreed to negotiate and in January, 1962 indicated it would entertain union proposals to compensate the affected employees in some way for the loss of the discount. The union declined to make any compromise proposals and on February 20 the parties reached an impasse. Respondent refused to submit the matter to arbitration.

The union filed an unfair labor practice charge with the Board and in addition, brought suit in the United States District Court for the Eastern District of Illinois alleging breach of contract for refusal to arbitrate. The suit in the district court is the subject of a companion appeal to this court, Local Union No. 702, International Brotherhood of Electrical Workers, A.F.L.–C.I.O. v. Central Illinois Public Service Company, 324 F.2d 920, (November 20, 1963).[1]

■ In this case, the employees had selected a union as their collective bargaining representative. There was a long history of amicable labor relations between respondent and its employees and the union. Respondent unilaterally discontinued its gas discount to a specified class of employees without affording the bargaining representative an opportunity to discuss and negotiate concerning the change. There was no evidence of or finding by the Board that respondent was guilty of bad faith in pursuing this course. A finding of bad faith is not a prerequisite to finding an unfair labor practice in such a situation.

In National Labor Relations Board v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed. 2d 230 (1962), in passing on this question, the Supreme Court said: "Unilateral action by an employer without prior discussion with the union does amount to a refusal to negotiate about the affected conditions of employment under negotiation, and must of necessity obstruct bargaining, contrary to the congressional policy. It will often disclose an unwillingness to agree with the union. It will rarely be justified by any reason of substance. It follows that the Board may hold such unilateral action to be an unfair labor practice in violation of § 8 (a) (5), without also finding the employer guilty of over-all subjective bad faith." Id. 369 U.S. at 747, 82 S.Ct. at 1114, 8 L.Ed.2d 230.

Section 8(a) (5) of the Act provides: "It shall be an unfair labor practice for an employer * * * to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title."

Section 8(d) of the Act provides: "For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment * * *."

It is clear from the record that respondent took its unilateral action of discontinuing the discount before it met and conferred with the union on this action. The Board properly found this to be in disregard of its statutory obligation.

The gas discount was worth an average of $48 to each of the 126 employees in the unit receiving the discount in 1960. Fewer than half the employees received the discount, since the others did not use gas for space heating. The discount had been in effect for about 36 years and is still in effect for retired employees.

---

[1]. In this companion appeal, we have today held that gas discount is a proper subject of arbitration and affirmed a summary judgment of the district court ordering defendant to proceed with arbitration as provided in the collective bargaining agreement.

It is clear to us that, under the facts in this case, the employee gas discount was an "emolument of value" which accrued to "employees out of their employment relationship." This language as originally used by the Board in another case found express approval by our court in Inland Steel Co. v. National Labor Relations Board, 7 Cir., 170 F.2d 247, 250–251, 12 A.L.R.2d 240 (1948), cert. denied, 336 U.S. 960, 69 S.Ct. 887, 93 L.Ed. 1112. It also conforms to the holding of the First Circuit in W. W. Cross & Co. v. National Labor Relations Board, 1 Cir., 174 F.2d 875, 878 (1949).

■ Respondent further contends that the employee gas discount is illegal under Illinois law and cannot be a proper subject of collective bargaining. There is no substance in this argument. Respondent had continuously granted the discount for 36 years. It gave as its reason for discontinuing the discount that it was originally instituted as a promotional device and was no longer needed or economically justified for that purpose. It never contended such discount was illegal until it appeared in the instant Board proceeding. It has never sought to stop the practice as to retired employees who continue to enjoy this benefit. No Illinois court or regulatory agency has made any such finding to our knowledge. If respondent cares to pursue this argument further, it has recourse to the proper court or agency in Illinois. It is not within our province to make such a determination here.

We hold that on a consideration of the record as a whole there is ample support for the finding of the Board that respondent unilaterally discontinued its employee gas discount in violation of § 8 (a) (5) and (1) of the Act, and that such finding is valid in law.

■ Respondent urges that, in the event it did commit an unfair labor practice as found by the Board, the Board abused its discretion or exceeded its power in awarding the employees compensation and interest thereon.

The Board found that respondent's subsequent bargaining concerning restoration of the discount was in good faith. It limited its order requiring respondent to reimburse the employees for the period beginning with the date respondent discontinued the discount, September 15, 1961, and ending on the date it reached an impasse with the union in its subsequent bargaining on this issue, February 20, 1962.

Section 10(c) of the Act requires that when the Board finds "any person named in the complaint has engaged in or is engaging in any such unfair labor practice," that it shall "take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies" of the Act.

The Board's order of reimbursement in this case falls squarely within the interpretation given the Act and is within the Board's broad discretionary powers to restore "the situation, as nearly as possible, to that which would have obtained but for [the unfair labor practice]," Phelps Dodge Corp. v. National Labor Relations Board, 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271 (1941); "to mould remedies suited to practical needs," National Labor Relations Board v. Seven-Up Co., 344 U.S. 344, 352, 73 S.Ct. 287, 291, 97 L.Ed. 377 (1953); and which are "to be adapted to the situation which calls for redress," National Labor Relations Board v. Mackay Co., 304 U.S. 333, 348, 58 S.Ct. 904, 912, 82 L.Ed. 1381 (1938).

In Isis Plumbing & Heating Co., 138 N.L.R.B. 716 (1962), the Board departed from a precedent of more than 26 years and granted interest on an award of compensation.

Three courts of appeal have had occasion to review this question in recent decisions. Each of them has upheld the award of interest on compensation. National Labor Relations Board v. Globe Products Corporation, 4 Cir., 322 F.2d 694; International Brotherhood of Operative Potters, AFL–CIO v. National Labor Relations Board, D.C.Cir., 320 F.2d 757; Reserve Supply Corporation

**920**

of L. I., Inc. v. N. L. R. B., 2 Cir., 317 F.2d 785 (May 27, 1963).[2]

We find ourselves in accord with these three decisions and for the reasons stated therein hold that the Board acted within its authority in awarding interest on the compensation granted herein.

We have considered all other arguments advanced by respondent and find them to be without merit.

The decision of the Board under review will be enforced.

Decision enforced.

2. In Revere Copper and Brass, Incorporated v. National Labor Relations Board, 7 Cir., 324 F.2d 132 (October 31, 1963), submitted to another division of this court prior to the submission of the instant case, a similar award of interest was upheld. This unrelated cause was heard by Circuit Judges Schnackenberg, Knoch and Swygert. In an opinion by Judge Knoch, it cited with approval the above recent decisions of the District of Columbia and Second Circuits. Thus, we find oursleves in complete agreement on this issue with our colleagues.