**LOCAL UNION NO. 702, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Plaintiff-Appellee,**

v.

**CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Defendant-Appellant.**

No. 14211.

United States Court of Appeals Seventh Circuit.

Nov. 20, 1963.

Thomas L. Cochran, Springfield, Ill., Robert Broderick, E. St. Louis, Ill., Sorling, Catron & Hardin, Springfield, Ill., for defendant-appellant.

Charles A. Werner, Schuchat, Cook and Werner, St. Louis, Mo., for plaintiff-appellee.

Before HASTINGS, Chief Judge, and DUFFY and KNOCH, Circuit Judges.

HASTINGS, Chief Judge.

This action was brought by plaintiff Local Union No. 702, International Brotherhood of Electrical Workers, AFL–CIO, against defendant Central Illinois Public Service Company.

The complaint alleged that defendant violated the collective bargaining agreement between plaintiff and defendant by refusing to submit the discontinuance of an employee gas discount to arbitration.

Jurisdiction of the district court was based on the Labor Management Relations Act (Taft-Hartley Act) § 301(a), 61 Stat. 156 (1947), 29 U.S.C.A. § 185(a) (1952).

The district court entered orders granting plaintiff's motion for summary judgment and directing defendant to proceed with arbitration as provided in the collective bargaining agreement. Defendant appealed.

Defendant is engaged in the business of furnishing electricity and gas as a public utility service to consumers in central and southern Illinois.

Defendant's employees in its Eastern Division have been represented by plaintiff since 1945. Plaintiff and defendant have entered into successive collective bargaining agreements since that date.

Defendant, from about 1925 until September 15, 1961, granted a 33⅓% discount in the price of gas sold to its employees who used gas for space heating. This discount was never included in the collective bargaining agreements.

On August 14, 1961, defendant unilaterally decided to discontinue the gas price discount to its employees. Defendant did not notify plaintiff or attempt to bargain with it concerning the discontinuance, which became effective September 15, 1961.

Plaintiff protested the discontinuance and requested that defendant restore the discount or negotiate the matter. Defendant finally agreed to negotiate and in January, 1962 indicated it would entertain proposals to compensate the affected employees in some way for loss of the discount. Plaintiff declined to make any compromise proposals and on February 20 the parties reached an impasse. Defendant refused to submit the matter to arbitration.

Article III of the collective bargaining agreement contained clauses which provided for arbitration and continuous performance by employees.

The arbitration clause provided that "[i]n case of *any* disagreement arising between [defendant] * * * and any employee and/or employees under this Agreement, such disagreement shall be first presented by such employee or employees to the Superintendent or Foreman of the Company in charge of the work and the Business Representative of the Local Union." (Emphasis added.)

If disagreements were not resolved in this manner, the agreement provided successive steps, ending with arbitration, for settling disputes. The agreement stated that "[a] decision rendered by a majority of an Arbitration Board shall be final and binding on the parties hereto."

In the continuous performance clause, plaintiff agreed "that under no conditions, and in no event whatsoever will the employees who are members of [the union] * * * be called upon or permitted to cease or abstain from the continuous performance of the duties pertaining to the positions held by them * * *."

Defendant agreed "to do nothing to provoke interruption of or prevent such continuity of performance of said employees, insofar as such performance is required in the normal and usual operation of [defendant's] * * * property."

Both parties agreed "that *any* differences that may arise * * * shall be settled in the manner herein provided." (Emphasis added.)

Upon defendant's refusal to submit the gas discount discontinuance to arbitration, plaintiff filed an unfair labor practice charge for refusal to bargain with the National Labor Relations Board and brought the instant suit in the United States District Court for the Eastern District of Illinois alleging breach of contract for refusal to arbitrate. The decision of the Labor Board is the subject of a companion appeal to this court, National Labor Relations Board v. Central

Illinois Public Service Company, 7 Cir., 324 F.2d 916 (November 20, 1963).[1]

Defendant's primary contentions on appeal are that the district court should not have exercised its jurisdiction because plaintiff waived or abandoned its right to sue in the district court by filing an unfair labor practice charge with the Board; and, in the alternative, that the district court erred in entering an order sustaining plaintiff's motion for summary judgment since the gas rate to be charged employees was not covered by the collective bargaining agreement and thus was not subject to arbitration.

In Smith v. Evening News Assn., 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), the Supreme Court held that the National Labor Relations Board does not have exclusive jurisdiction over acts which are unfair labor practices and also breaches of collective bargaining contracts. "The authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301, but it is not exclusive and does not destroy the jurisdiction of the courts in suits under § 301." Id. 371 U.S. at 197, 83 S.Ct. at 269, 9 L.Ed.2d 246.

However, the Court indicated that such jurisdiction might be improper in certain situations. The Court stated, "If * * * there are situations in which serious problems will arise from both the courts and the Board having jurisdiction over acts which amount to an unfair labor practice, we shall face those cases when they arise." Id. 371 U.S. at 197–198, 83 S.Ct. at 269, 9 L.Ed.2d 246.

■ Defendant argues that such a situation exists in this case. Defendant asserts that if this court affirms the Board's order in the companion case, which requires defendant to restore any loss to employees, plus interest, such affirmance could interfere and conflict with an arbitrator's decision, if the arbitrator held for defendant. We disagree.

A decision by an arbitrator in this case would have a prospective effect only. Since the Board's order, which we affirmed in the companion appeal, would not apply after a discontinuance of the gas discount achieved through collective bargaining or arbitration, there can be no possible conflict between the Board's order and a decision by an arbitrator.

We hold that the Board and district court properly exercised their respective jurisdictions.

■ Defendant's other primary contention is that the collective bargaining agreement does not cover the gas rate to be charged to employees and thus the gas rate is not subject to arbitration.

In order to make the gas discount part of the collective bargaining agreement and subject to arbitration, the agreement need not necessarily provide expressly for the gas discount.

As noted previously, the collective bargaining agreement between plaintiff and defendant contained a no-strike clause and an arbitration clause. The Supreme Court announced in Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 455, 77 S.Ct. 912, 917, 1 L.Ed. 2d 972 (1957), that "the agreement to arbitrate grievance disputes is the *quid pro quo* for an agreement not to strike." The Court made this clear in United Steelworkers of America v. Warrior & Gulf Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). "When * * * an absolute no-strike clause is included in the agreement, then in a very real sense everything that management does is subject to the agreement, for either management is prohibited or limited in the action it takes, or if not, it is protected from interference by strikes." Id. 363 U.S. at 583, 80 S.Ct. at 1353, 4 L.Ed. 2d 1409. "In the absence of any express provision excluding a particular griev-

---

ance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." Id. 363 U.S. at 584–585, 80 S.Ct. at 1353–1354, 4 L.Ed.2d 1409.

Defendant contends that the no-strike and arbitration clauses are capable of both a narrow and broad construction and are thus ambiguous. The narrow construction is said to limit the two clauses to matters expressly provided for in the collective bargaining agreement.

We feel this limited interpretation to be strained and contrary to the plain meaning of the agreeement and the intent expressed therein of plaintiff and defendant.

Assuming, arguendo, that the pertinent clauses in the agreement are ambiguous and capable of a limited as well as a broad construction, the Supreme Court has indicated that such clauses should be given their broad construction. The Court in discussing the Congressional policy of settling disputes by arbitration stated, "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of America v. Warrior & Gulf Co., supra, 363 U.S. at 582–583, 80 S.Ct. at 1352–1353, 4 L.Ed. 2d 1409.

We hold that the no-strike and arbitration clauses are broad in coverage and thus the employee gas discount is subject to arbitration.

Our holding is in harmony with the rationale of the Supreme Court in giving approval to the broad policy of encouraging arbitration as a vital part of the collective bargaining process under the circumstances present in the instant case. In United Steelworkers of America v. Warrior & Gulf Co., supra, 363 U.S. at 581, 80 S.Ct. at 1352, 4 L.Ed.2d 1409, it said:

> " * * * But the grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government. Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties. The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement.
>
> "Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement. The grievance procedure is, in other words, a part of the continuous collective bargaining process. It, rather than a strike, is the terminal point of a disagreement."

Defendant finally contends that the gas discount given to its employees is a part of its rate structure controlled by the Illinois Commerce Commission. That it is not, therefore, a proper subject for arbitration and is an illegal preference under the Illinois Public Utilities Act. We disposed of this issue adversely to defendant in the companion appeal decided on this day. National Labor Relations Board v. Central Illinois Public Service Company, supra. We need not comment further here.

We have considered other arguments advanced by defendant. In view of what we have held herein, we find them to be without merit.

The district court properly found that there were no genuine issues of material facts presented by the pleadings. It did not err in granting summary judgment for plaintiff as a matter of law and in ordering defendant to proceed with arbitration as provided in the collective bargaining agreement.

The judgment of the district court is affirmed.

Affirmed.