**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BELFRY COAL CORPORATION, Respondent.**

**No. 15302.**

United States Court of Appeals
Sixth Circuit.

April 6, 1964.

R. B., Washington, D. C., on the brief, for respondent.

Before CECIL and O'SULLIVAN, Circuit Judges, and McALLISTER, Senior Circuit Judge.

PER CURIAM.

This case is before the Court on petition of the National Labor Relations Board, pursuant to Section 10(e) of the National Labor Relations Act (Section 160(e), Title 29, U.S.C.), for enforcement of the Board's order issued on November 19, 1962, against Belfry Coal Corporation, respondent. The parties will be referred to herein as the Board and the Company, respectively. The Board's order and decision is reported at 139 NLRB 1058.

The Board found that the Company engaged in unfair labor practices in violation of Section 8(a) (1) of the Act, (Section 158(a) (1), Title 29, U.S.C.),[1] by coercively interrogating its employees regarding their union membership and sympathies, and by discouraging concerted activity of its employees in discriminatorily discharging two of its employees. There is no dispute over the actual facts of the case but the parties interpret them differently.

In the fall of 1961, when the Company was preparing to open its mine, Troy Deskins, president of the Company, told a group of employees assembled in his office that the mine would be operated as a non-union mine. He said that if they did not want to work in a non-union mine he wished that they would quit then. Mr. Deskins stated in the presence of the employees, both before and after the mine opened, that he could not sign a union contract because he could not pay union wages. Each employee up-

Henry D. Stratton, Pikeville, Ky., Francis M. Burke, Pikeville, Ky., on the brief, for petitioner.

Robert B. Schwartz, Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., Atty., N. L.

1. "(a) It shall be an unfair labor practice for an employer—
"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;"
§ 157. "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a) (3) of this title."

on being hired was required to sign a contract which contained, among other things, an agreement that he would not cause the Company any trouble and that he would not join a picket line.

Mining operations began in December, 1961, and early in 1962 the union began an organizational campaign. Stirl Harris, mine superintendent, asked several employees if they had signed union cards. He told some of them it was not right to join the union after signing the contract with the no-picket pledge. Harris reported to President Deskins the responses of the employees.

Willard Winchester and Harold May signed union cards and became active in trying to organize the other employees. One day in March, 1962, Harris went to where Winchester was working and asked him if he had signed a card. Harris said he "had to find out." Winchester said he had signed a card and Harris asked him why he did it. About the middle of March, 1962, Harris met May at the ramp and asked him why he had signed a union card. Harris told him that he thought he (May) would be the last one to sign with the union.

On March 29th, Jacob Runyon, a mine inspector for the State of Kentucky, visited the mine for the purpose of inspection. He found some conditions which did not meet the minimum safety standards of the State of Kentucky. He posted warning signs and ordered the men not to work beyond the signs until the conditions were corrected. Harris insisted that the men continue to work.

Winchester and May refused to go beyond the danger signs. The employees then assembled at the mouth of the mine and Harris called Deskins. Deskins was informed of the action of the inspector. He told the employees he would stand behind them in any difficulty with the State. Winchester and May still refused to work beyond the signs and Deskins

ordered them discharged. The other employees went back to work.

Upon these facts, which are here briefly stated, the Board found that the Company engaged in the unfair labor practices heretofore mentioned. The Board found that Winchester and May were not discharged because of union activity. It found that in discharging them the Company discouraged their right to engage in concerted activity for their mutual protection.

The order of the Board is in the usual form. The Board ordered the Company to cease and desist from engaging in unfair labor practices, post a notice and offer reinstatement of employment to Winchester and May with payment of back wages together with interest at 6% on the accumulated back pay.

■ The Company challenges the allowance of interest by the Board. This Court has heretofore determined that an allowance of interest is discretionary with the Board. Philip Carey Mfg. Co. Miami Cabinet Division v. N. L. R. B. (International Union, United Automobile Aerospace and Agricultural Implement Workers of America, A.F.L.-C.I.O. v. N. L. R. B.), 331 F.2d 720, C.A. 6. See also: N. L. R. B. v. Central Illinois Public Service Co., 324 F.2d 916, C.A. 7; Revere Copper and Brass, Inc. v. N. L. R. B., 324 F.2d 132, C.A. 7; Marshfield Steel Co. v. N. L. R. B., 324 F.2d 333, C.A. 8; N. L. R. B. v. Globe Products Corp., 322 F.2d 694, 696–697, C.A. 4; Reserve Supply Corp. of L. I., Inc. v. N. L. R. B., 317 F.2d 785, 789, C.A. 2; International Brotherhood of Operative Potters, A.F.L.-C.I.O. v. N. L. R. B., 320 F.2d 757, 760–761, C.A.D.C.

■ Viewing the record as a whole we conclude that the order of the Board is supported by substantial evidence. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. We accordingly grant enforcement of the order.