### NATIONAL LABOR RELATIONS BOARD, Petitioner,
#### v.
### HUTTIG SASH AND DOOR COMPANY, Respondent.

No. 10253.

United States Court of Appeals
Fourth Circuit.

Argued April 6, 1966.

Decided May 20, 1966.

Rehearing Denied June 28, 1966.

218

Peter Ames Eveleth, Atty., National Labor Relations Board (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Gary Green, Atty., National Labor Relations Board, on brief), for petitioner.

George V. Gardner, Roanoke, Va. (Asa R. Ambrister, Washington, D. C., on brief), for respondent.

Before SOBELOFF and BOREMAN, Circuit Judges, and BARKSDALE, District Judge.

SOBELOFF, Circuit Judge:

The National Labor Relations Board held that Huttig Sash and Door Company, by refusing to sign a collective bargaining contract after it had reached agreement with the union on all contract terms, violated its duty to bargain in good faith within the meaning of section 8(a) (5) of the Act.

The company contends that the union at the end of the negotiations injected a demand that the company meet with it to ·discuss the discharge of employee C. A. Helms, and that as the company refused to accede to this demand, · the parties had not reached full accord on the terms of the contract.[1]

The Board agreed that the union made an inquiry about Helms at the conclusion of the last negotiation session on May 18, 1964, but found that the union intended merely to inform the company of its interest in the matter, and that the dispute over Helms was considered by both union and company representatives as a matter entirely separate from the terms of the contract.

As the representatives of the company and the union parted on May 18, the final word of Plant Manager Barnett was that he would have the contract printed up for signature. In the latter part of May, when the union inquired of Barnett about the delay in the printing, Barnett replied that the contract was still out of town being printed. In June, however, after further inquiry from the union, Barnett took the position for the first time that he could not complete the contract until the Helms case had been dropped. The principal union negotiator, Craven Deese, testified that he protested to Barnett that an agreement had already been reached and that Helm's discharge was

unrelated to the contract. Barnett remained firm.

The Board concluded that the company violated section 8(a) (5) when it informed the union that the contract would not be executed "until the Helms case had been dropped."

From the undisputed facts it is manifest that the company's bargaining representative did not as of May 18 consider the Helms matter related to the terms of the agreement. Nor did Barnett indicate, in the latter part of May, that the Helms dispute was a matter to be resolved before the contract could be executed. Moreover, there is no testimony to refute the finding that the parties had on May 18 reached agreement on all contract terms; the company presented no witnesses at the unfair labor practice proceeding. The Board's decision is amply supported by the record and by the statute. Section 8(d) specifically provides that the statutory duty to bargain in good faith encompasses "the execution of a written contract incorporating any agreement reached if requested." 29 U.S.C.A. § 158(d). See, e. g., Lozano Enterprises v. NLRB, 327 F.2d 814 (9th Cir. 1964); Standard Oil Co. v. NLRB, 322 F.2d 40, 44–45 (6th Cir. 1963); NLRB v. WATE, Inc., 310 F.2d 700 (6th Cir. 1962); see also H. J. Heinz Co. v. NLRB, 311 U.S. 514, 523–526, 61 S.Ct. 320, 85 L.Ed. 309 (1941).

The Board's remedial order accordingly requires the employer, upon request of the union, to execute a written contract embodying the terms agreed upon. And, as the parties agreed at the May 18 meeting to make the contract retroactive to the terminal date of the earlier contract, the order of the Board requires the employer to make the employees

1. The fact that the union membership had not yet ratified the agreement does not, as the company contends, preclude a finding that full accord had been reached. It is clear from the record in this case that both company and union representatives considered union ratification a mere "formality." Union representative Craven Deese assured Plant Manager Barnett that there was "no question" about the membership's approval, and there is no testimony to indicate that the company negotiators doubted or had reason to doubt Deese's assurances. The membership ratified the agreement on May 20, 1964, two days after the last bargaining session.

whole by giving the negotiated contract retroactive effect to April 27, 1964. The order further awards interest at 6% on such sums as the employees may have lost by reason of the company's unlawful refusal.

■ We find unconvincing the employer's argument that an award of 6% interest is an abuse of the Board's concededly broad discretion in fashioning appropriate remedies. The company unlawfully withheld benefits from the employees to which the unexecuted collective agreement entitled them. The union in no way contributed or acceded to the company's unlawful conduct, and we see no reason to deprive the employees of the complete redress contemplated by the interest award. NLRB v. Central Illinois Public Service Co., 324 F.2d 916 (7th Cir. 1963) (employer's unlawful unilateral discontinuance of gas discount to employees remedied by award of compensation and 6% interest thereon). See also NLRB v. Globe Products Corp., 322 F.2d 694, 696–697 (4th Cir. 1963).

■ The Board order, however, provides an alternative remedy: If the union decides that the May 18 agreement is no longer satisfactory, the employer is required to bargain with the union upon request and to embody any future understanding in a signed agreement. We cannot enforce this part of the Board's order. The whole basis of the Board's case is that the employer and the union reached agreement on May 18. The Board may not allow the union to stand on the agreement and at the same time unilaterally to abrogate it and demand negotiations for a new contract. Of course, if complete accord had not been reached on May 18, a bargaining order might be eminently appropriate, but where the Board has found that an agreement had been reached, it is inconsistent and unreasonable to allow the union the option of binding the employer to the agreement or of abrogating

the contract and requesting negotiations anew.[2] The Order of the Board is

Enforced as modified by this opinion.

## ON MOTION FOR REHEARING ORDER.

On May 20, 1966, the court issued its decision enforcing that part of the Board's remedial order that required the employer, upon request of the union, to execute a written collective bargaining contract embodying the terms orally agreed upon on May 18, 1964, and to make the employees whole for any loss of benefits resulting from the employer's unlawful refusal to execute the collective agreement. In addition to the substantive terms agreed upon on May 18, 1964, it was understood by the parties that the new agreement would expire on April 26, 1966.

We refused, however, to enforce that part of the order which afforded the union the choice of standing on the May 18 agreement or of abrogating it and compelling the employer to negotiate a new collective agreement. In requesting a rehearing on this issue, the Board points out that the question was neither briefed nor argued to the court, and asserts that the employer would, indeed, have been precluded from raising the issue in this court because of its failure to make the objection before the Board in the unfair labor practice proceeding. The Board also maintains that the alternative remedy is a proper exercise of its discretion in fashioning appropriate remedies.

■ However this may be, we conclude that a rehearing would serve no useful purpose. Because the May 18 agreement expired April 26, 1966, the employer and the union are now required in any event to engage in collective bargaining in an effort to reach a new agreement. Even if the Board's alternative remedy were proper, a decision to that effect would be of only academic

2. We are aware that this discussion of the Board's alternative remedy may be academic, for the unexecuted agreement reached on May 18, 1964, expired April 26, 1966. The inconsistency of the remedies is, however, obvious and should not go unmentioned.

interest. In light of the circumstances called to our attention, should this issue arise in a future case, the court will not deem the decision in this case as precluding the point now made by the Board, but will be prepared to consider it on its merits. However, the present petition for rehearing is denied.