369 F.2d 526
 LOCAL UNION NO. 483, INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, AFL-CIO, a Voluntary Unincorporated Association, Plaintiff-Appellant,
v.
SHELL OIL COMPANY, a Corporation, Defendant-Appellee.
 No. 15447.
 United States Court of Appeals Seventh Circuit.
 September 22, 1966.
 
 J. F. Souders, St. Louis, Mo., Thomas Q. Keefe, East St. Louis, Ill., for plaintiff-appellant. Gruenberg, Schobel & Souders, St. Louis, Mo., of counsel.
 John Fred Schlafly, R. Emmett Fitzgerald, Alton, Ill., for defendant-appellee. Schlafly, Godfrey & Fitzgerald, Alton, Ill., of counsel.
 Before DUFFY, KNOCH and KILEY, Circuit Judges.
 KILEY, Circuit Judge.
 
 
 1
 The district court dismissed plaintiff-Union's action, under section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), to compel arbitration of a grievance under its bargaining agreement with defendant, the Shell Oil Company. The Union has appealed. We affirm in part and reverse in part.
 
 
 2
 The grievance arose from Shell's contracting out to Nooter Corporation of St. Louis, Missouri, the five-million-dollar work involved in a "turn-around" renovation and construction project in September and October of 1963 at Shell's Wood River, Illinois, Refinery. The Union claimed that Shell had, in contracting out the work, discriminated against boilermaker members and improperly assigned the work to persons outside the unit. It demanded arbitration of the grievance, the demand was rejected, and this suit followed.
 
 
 3
 We think the first issue to be decided is, as stated by the Union, whether the question of Shell's right to contract out the work is arbitrable.[1] We hold that the district court correctly decided that the bargaining agreement did not "forbid or limit" Shell's contracting out of the work and consequently there was "no application or interpretation" of the agreement to be arbitrated under Article 18 of the bargaining agreement.[2]
 
 
 4
 The Union claims that the district court substituted itself for the arbitrator by its application and interpretation of the bargaining agreement with respect to contracting out of the work in excess of its function delineated in United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 567-569, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). The claim has no merit.
 
 
 5
 The district court did not decide the merits of the Union's grievance, but decided that the claimed grievance — plaintiff claimed defendant violated the Preamble, Article 5 (Seniority), Article 8 (Working Hours) and Article 23 (Discrimination) — fell outside any promise of Shell's in the agreement. The question the court decided was not whether there was a violation of a provision, but whether there was a provision in the contract. As the court found, and Shell argues here, Article 18, the arbitration clause before us, is not a broad clause, such as the broad "any disagreement" clause in Local Union No. 702, IBEW v. Central Ill. Pub. Serv. Co., 324 F.2d 920, 921 (7th Cir. 1963), but is limited to "application or interpretation of this Agreement." Here the Union is making a claim which "on its face" is not governed by the agreement. In United Steelworkers of America v. American Mfg. Co., 363 U.S. at 568, 80 S.Ct. at 1346, the rule stated is that the function of the court is to decide whether the claim is on its face governed by the contract.
 
 
 6
 The district court found that the bargaining history between Shell and the Union shows that the Union had sought without success to have Shell agree to a provision in the agreement "specifically prohibiting or limiting" Shell's right to contract out work, and that each proposal was rejected by Shell and none included in the agreement. This finding has substantial support in the record.
 
 
 7
 The Union proposed limitations on Shell's freedom to contract out work for the 1958 and 1960 bargaining agreements. It proposed, for the 1962 agreement before us, that "the company will contract out such work only to the extent it cannot be performed by existing Company forces without prolonged over-time and working on existing classifications within the scope of this Agreement. * * *" Shell consistently rejected the proposals and they were omitted from the agreements. The rejection of the 1962 proposal was a ground for the strike which began August 18, 1962, and ended February 3, 1963. Renewed proposals were made August 18, August 29, September 24, November 19, and November 21, 1962. Finally, on November 26, the Union proposed a "package" to settle the strike.
 
 
 8
 The package contained a proposal that the Union would consider a letter from Shell to the effect that Shell reserved its freedom to contract out maintenance and operational work, but in accordance with past practice would consider available qualified employees. On December 13, 1962, Shell responded with a letter which omitted any reference to past practice, claiming its determination to decide "whether any work will be assigned to employees or contracted," but stating it would give what it considered appropriate consideration to laid off employees with seniority. The letter was re-dated and included in a package proffered by Shell in January, 1963. The Union made no response to the letter. The agreement ending the strike contained no provision respecting Shell's right to contract out work.
 
 
 9
 Shell's consistent refusal, in three bargaining agreements, to agree to limit its freedom to contract out the work, the settlement of the strike and that issue without acceding to the Union demand, and the Union's tacit acceptance of Shell's position in its December, 1962, letter distinguish contracting out cases in which courts have compelled arbitration. E.g., Procter & Gamble Independent Union of Port Ivory, N. Y. v. Procter & Gamble Mfg. Co., 298 F.2d 644 (2d Cir. 1962). The evidence before us indicates "beyond peradventure of doubt" that contracting out in itself was not intended to be a subject of grievance. Thus the case comes within the rule stated in the Procter & Gamble case, 298 F.2d at 646.
 
 
 10
 And we do not think that the same court's views in International Union of Elec., Radio & Mach. Workers v. General Elec. Co., 332 F.2d 485, 490 (2d Cir.), cert. denied, 379 U.S. 928, 85 S.Ct. 324, 13 L.Ed.2d 341 (1964), upon use of bargaining history, militate against our conclusion. The bargaining history here of unsuccessful Union attempts is capped by the Union's tacit acceptance of Shell's letter reserving freedom to contract out work and promising to give "such consideration as in its opinion is appropriate" to employment opportunities to employees with seniority. We think that nothing in the beneficent purpose of the labor-management arbitration process can fairly accommodate the Union's contention and also that there is here the "most forceful evidence of a purpose to exclude" this part of the grievance from arbitration. United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 585, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409 (1960).
 
 
 11
 We think the district court properly relied upon this court's decision in Independent Petroleum Workers of America v. American Oil Co., 324 F.2d 903 (7th Cir. 1963), aff'd, 379 U.S. 130, 85 S.Ct. 271, 13 L.Ed.2d 333 (1964), in deciding in favor of Shell. There are some differences, of course, in the facts. But fundamentally the question decided there, and here, is that where arbitration is limited in the bargaining agreement to questions involving the application and interpretation of the agreement, and the agreement does not limit the freedom of the employer to contract out work, a court should not compel arbitration. This court there considered the Supreme Court cases (the "Steelworkers Trilogy") relied upon here and found that those cases did not change the principle "that compulsory arbitration cannot be properly awarded absent a contract between the parties agreeing thereto." 324 F.2d at 906. The court there considered as having "some significance" the bargaining history between the parties, which showed the Union's lack of success in gaining an agreement prohibiting or limiting the company's right to contract out work, and the silence of the contract on the point. The history before us is stronger for Shell because of the final letter written by Shell. The district court could have found, with support in the evidence, that it was accepted by the Union's failure to reject it orally or in writing. There was testimony that union spokesman Harrelson said of the letter that it "is the best we can get, we'd better take it." Harrelson was not called to rebut this testimony.
 
 
 12
 The letter bound Shell only to give consideration when contracting out the "turn-around" and construction work to the hiring of plaintiff's boilermaker members with seniority. It renders inapplicable the rule from United Steel-workers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 585, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409 (1960), that where there is no clause expressly excluding contracting out, or "most forceful evidence of a purpose to exclude," the arbitrator, and not the court, should interpret the agreement to determine whether the parties intended the claimed grievance to be arbitrable.[3]
 
 
 13
 We conclude that the district court correctly decided the contracting out issue.
 
 
 14
 But this conclusion does not remove the question of discrimination under Article 23 of the agreement from the scope of the arbitration provision. Article 23, entitled "Coercion, Intimidation and Discrimination," provides: "There shall be no coercion, intimidation or discrimination practiced by the Employer or Unions against any employee because of membership or nonmembership in any Union." The tacit acceptance of the company's final statement upon the contracting out issue does not preclude the Union from asserting a grievance with respect to a claimed violation of Article 23 in the exercise of the "freedom" reserved by the company in its final statement.
 
 
 15
 This part of the grievance states that the company "has discriminated against the men in the Boiler-Makers group in assignment of this [maintenance and repair] work. * * *" The Complaint for Injunction filed by the Union alleged the filing of a grievance alleging, among others, a violation of Article 23 in that the company "has discriminated against the men in the Boilermakers group in assignment of this work," and that the defendant has refused to submit the grievance to arbitration in accordance with the provisions of Article 18. The prayer of the complaint sought submission of the "unresolved grievances to arbitration."
 
 
 16
 The district court made no finding on or reference to this demand for arbitration on the issue of discrimination in violation of Article 23, at the trial or after alternative motions for new trial or amendment of findings and judgment called the omission to the court's attention.
 
 
 17
 Since Article 23 is part of the bargaining agreement, and its violation is alleged in the grievance, this is within the scope of Article 18, i. e., arbitration for "controversies arising out of the application or intepretation" of the agreement.
 
 
 18
 It is not for this court to decide on the facts developed at trial that the Union cannot prevail in arbitration of this part of the grievance. Thus whether the Union claim is a "sham," in fact frivolous or moot, as Shell contends, is for the arbitrator. Neither was the Union required to present proof in the district court to show that its arbitrable grievance had merit. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 568, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). That question also is for the arbitrator. The agreement shows on its face that the claim is covered by the contract and is a matter of "application or interpretation" of the agreement as a matter of law. The court erred in not ruling on this part of the grievance and not ordering that it be submitted to arbitration in accordance with Article 18 of the agreement.[4] The question whether Shell maintained control of the hiring and firing of Nooter's boilermaker-employees is embraced in the discrimination issue.
 
 
 19
 We hold that the district court erroneously declined to decide the question whether the claimed grievance in Shell's alleged discrimination in contracting out the work is arbitrable under Articles 23 and 18 of the agreement, that as a matter of law that claim is arbitrable, and that dismissal of this part of the Union's complaint was reversible error.
 
 
 20
 For the reasons given, the judgment of dismissal is affirmed so far as it concerns the issue of Shell's right to contract out work. As to the discrimination issue we reverse and remand for entry of judgment for plaintiff-Union granting the relief as prayed.
 
 
 
 Notes:
 
 
 [1]
 The grievance filed by the Union states:
 The Company has taken the maintenance and repair work on the cat cracker, properly belonging to the Boilermakers group, has discriminated against the men in the Boilermakers group in assignment of this work and the Company has further made improper assignment of such work to persons outside the unit.
 
 
 [2]
 Article 18 of the agreement provides:
 
 
 [1]
 In the event complaints or controversies arising out of the application or interpretation of this Agreement remain unsettled after full compliance with the procedure set forth in Article 17 preceding, such may be settled by arbitration as follows: [a representative of the Employer, and one of the Union, select a third person to act as umpire, and his findings are final and binding on the parties.]
 
 
 [3]
 See generally Smith & Jones, The Supreme Court and Labor Dispute Arbitration: The Emerging Federal Law, 63 Mich.L.Rev. 751 (1965)
 
 
 [4]
 The Union also argues that the district court's finding of fact "9" is clearly erroneous in stating that "theplaintiff informed the defendant that contracting of maintenance and construction work was not a proper subject for arbitration under Article 18. * * *" (Emphasis added.) The record is devoid of evidence to support that finding, which is contrary to the Union's consistent position. Both parties agree that there was an inadvertent mistake, and that the italicized words should be interchanged, i.e., "the defendant informed the plaintiff. * * *"
 
 
 
 21
 KNOCH, Circuit Judge (dissenting).
 
 
 22
 It seems to me inconsistent to sustain the District Court's decision on the issue of arbitration of Shell's right to contract out work and then to destroy the effect of that decision by holding that Shell must nevertheless arbitrate that part of the stated grievance which accuses Shell of discrimination against some employees on account of their union membership by contracting out work to a firm which hires other members of the same union.
 
 
 23
 I would affirm the decision of the District Court in toto.