UNITED STEELWORKERS OF AMER-
ICA, AFL-CIO, Appellant,

v.

AMERICAN INTERNATIONAL ALU-
MINUM CORP., Appellee.

No. 21406.

United States Court of Appeals
Fifth Circuit.

July 9, 1964.

Rehearing Denied Aug. 19, 1964.

Nathan Lipson, Pittsburgh, Pa., Neal P. Rutledge, Miami, Fla., David E. Feller, Elliot Bredhoff, Jerry D. Anker, Michael H. Gottesman, Washington, D. C., for appellant.

Herbert B. Mintz, R. M. MacArthur, Miami, Fla., for appellee.

Before TUTTLE, Chief Judge, BROWN, Circuit Judge, and BREWSTER, District Judge.

JOHN R. BROWN, Circuit Judge.

The question here is whether the District Court properly dismissed the complaint brought by the Union[1] under § 301, 29 U.S.C.A. § 185, to compel the Employer to arbitrate a number of grievances, the principal one being the discharge of all employees after a lockout. We think none of the reasons advanced by the Employer or adopted by the District Court justify denial of arbitration. We therefore reverse.

The facts for our purposes may be severely capsulated. The collective bargaining contract agreement ran to December 19, 1963. During its term, on August 28, 1963, the Employer, claiming that the Union and its members had been guilty of slowdowns expressly prohibited by the Agreement, instituted a lockout by shutting down the plant. For like reasons it declared the contract to be terminated. Two days later, August 30, the Employer advised each employee by telegram that his employment had been terminated. This was tantamount to a discharge. Despite repeated efforts by the Union to confer about the lockout and discharges, the Employer purposefully declined to discuss the matter or process the grievance concerning the asserted wrongful discharge.[2]

To the Union's complaint in court, the Employer responded with a motion to dismiss on the grounds that "1. This court does not have jurisdiction of this case," and "2. The complaint does not state a claim against defendant upon which relief can be granted." Actually, however, the Court, as do we, considered it, at least in part, as a motion for summary judgment since the motion to dismiss incorporated by reference the "brief in support of motion to dismiss complaint." This brought in considerable factual material as to proceedings before the National Labor Relations Board, F.R.Civ.P. 12(b), 56(e), including the charge, complaint and answer before the Labor Board. Charging a variety of violations the complaint contained only one dealing with the discharge of August 28–30 as such.[3]

The motion to dismiss, as thus expanded, asserted primarily that exclusive jurisdiction over the subject matter of this controversy was with the Labor Board. In addition, the Employer urged that arbitration should not be ordered since the collective bargaining agreement had been terminated for good cause by the Employer. Assuming continuance of the collective bargaining agreement, the Employer also claimed that the Union had failed to comply with the procedural conditions precedent to arbitration and in any event, the asserted grievance was

1. United Steelworkers of America, AFL-CIO.

2. Also pending were routine grievances 69 through 74 which had been initiated prior to the purported unilateral termination of the contract on August 28.

.3. It charged a number of violations, 29 U.S.C.A. § 158(a) (1), (a) publishing a plant rule against circulation of petitions, (b) publishing a rule requiring cooperation with interrogation of employees, (c)

unlawful interrogation of employees by counsel concerning protected activities; and also § 8(a) (5) failure to bargain by (a) cancelling existing contract, (b) refusing to meet with Union representatives, (c) refusing to reinstate employees to derogate Union leadership, (d) humiliating treatment of Union representatives to disparage their standing; and § 8(a) (1) and (3) for discharging the employees and refusing thereafter to reinstate them.

expressly excluded from arbitration by the contract.

■ On this motion, as expanded, the District Court, without illumination by any opinion, entered an order which "ordered, adjudged and decreed that [the Employer's] Motion to Dismiss Complaint for specific performance, be and the same hereby is, granted."[4] The brief order had first recited that "the parties are in substantial agreement as to the pertinent facts concerning the Complaint herein and the pendency of a complaint" before the Labor Board, and that upon consideration thereof "the Court finds and determines that in the exercise of its discretion its jurisdiction over the subject-matter should not be exercised at this time or until said matters and issues now before said [Labor] Board have been finally adjudicated."

As we ought not to express any views on the asserted competition between court-ordered arbitration and Labor Board proceedings unless arbitration is otherwise apparently demanded, we think it appropriate first briefly to dispose of the Employer's contention as to arbitrability.

■■ The assertion of a failure to comply with the procedural conditions precedent fails for two reasons. First, and probably foremost, the Supreme Court approves the view we have previously expressed[5] that "once it is determined" as we do next, "that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to an arbitrator." John

Wiley & Sons v. Livingston, 1964, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898, 909. And second, as we have many times held, when the Employer has made it as clear as it has here, that under no circumstances will it recognize the right to arbitration sought by the Union, the Union need not go through perfectly useless formalities to set the wheels in motion. International Ass'n Machinists v. Hayes Corp., 5 Cir., 1961, 296 F.2d 238; 5 Cir., 1963, 316 F.2d 90; Southwestern Elec. Power Co. v. Local Union No. 738, 5 Cir., 1961, 293 F.2d 929.

The other procedural contention, that arbitration may not be had after termination of the contract, warrants no discussion ever since United Steelworkers v. Enterprise Wheel & Car Corp., 1963, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424; cf. John Wiley & Sons, Inc. v. Livingston, 1964, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898.

■ That leaves two remaining assertions as to nonarbitrability. The first, stated variously, is that the Union, by engaging in a slowdown in violation of the no strike and anti-slowdown clause somehow repudiated the collective bargaining agreement so that the company had a right, which it concededly claimed to exercise, to "terminate" the agreement. That notion has likewise been put to rest by the recent decision in Local Union No. 721, etc. v. Needham Packing Co., 1964, 376 U.S. 247, 84 S.Ct. 773, 11 L.Ed.2d 680. Paraphrasing it, the Employer's " * * * allegations by way of defense * * * that the union breached the nostrike clause * * * did not release [the Employer] from its duty to arbitrate the union's claim that

4. This order was dated January 20, 1964. Notice of appeal was given February 18, 1964. There was no other order entered. It put an end to the case. The Union was entitled to treat the dismissal as final, which it did. It was not required to formally disclaim any right to file an amended complaint. Nothing in Erstling v. Southern Bell Tel. and Tel. Co., 1958, 5 Cir., 255 F.2d 93; Black v. First National Bank, 5 Cir., 1958, 255 F.2d 373; Williams v. Peters, 9 Cir., 1956, 233

F.2d 618, 16 Alaska 303; Bland v. Hartman, 9 Cir., 1957, 245 F.2d 311, 313, supports the Employer's contention that the order of January 20, 1964, was not final and appealable.

5. Deaton Truck Line, Inc. v. Local Union 612, 5 Cir., 1962, 314 F.2d 418, 422, was cited as representative of the Fifth Circuit view which the Supreme Court adopted. See also International Union, U.A.W. v. Daniel Radiator Corp., 5 Cir., 1964, 328 F.2d 614.

employees had been wrongfully discharged." [6]

The second contention, that the collective bargaining contract excluded this grievance from arbitration, is similarly unfounded. It is true, as urged, that the contract did purposefully exclude certain matters from the grievance machinery. The exclusion is important in highlighting those grievances which were not thereby excluded. This excepted from the grievance machinery "paragraphs 1, 2, 3, and 5 of the Management Rights Provisions * * * and paragraphs 1 and 3 of the No Strike and No Lockout Provisions."

This left paragraph 4 of management rights provisions and paragraph 2 of the no strike and no lockout provisions still subject to the grievance process. The former, (par. 4) prescribed that "Subject to the provisions of this Agreement the Company shall have the right to demote, suspend, discipline, or discharge for just cause, * * * employees because of lack of work or other legitimate reason." More significant, paragraph 2 of the no-strike-no-lockout provisions prescribed that "2. Any employee or employees who violate(s) or do not comply with the foregoing Section I shall be subject to discharge."

■■ This brings into play Article XIV which provides "1. In the event an employee has been discharged, and he feels he has been unjustly dealt with, such discharge may be submitted as a grievance * * *." We can assume that the Employer is correct that neither the Employer nor Union has any right to demand arbitration of a controversy concerning whether there has been a strike, picketing, stoppage, slowdown, sitdown, stayin, or other curtailment or interference with work on the part of employees or a lockout on the part of the employer.[7] But if a discharge resulted from either strike or work stoppage on the union's part or a lockout by the employer, the contract plainly recognized that this dispute was open for arbitration. And certainly, whatever arguments might be mustered for a contrary result, the purpose to exclude a grievance over discharge flowing from a work stoppage is not so clear as to permit a court, under the guise of contract construction, to invade that territory now reserved to the arbitrator. United Steelworkers v. American Mfg. Co., 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed. 2d 1424; Lodge No. 12, etc. v. Cameron Iron Works, Inc., 5 Cir., 1961, 292 F.2d 112; Local Union No. 253, Taft Broadcast. Co. v. Radio Broadcast Tech., 5 Cir., 1962, 298 F.2d 707; International Ass'n of Machinists v. Hayes Corp., 5 Cir., 1961, 296 F.2d 238; 5 Cir., 1963, 316 F.2d 90.

■ The case is one, therefore, for arbitration, and there being no doubt that the Employer has purposefully denied the duty to arbitrate, it is plain that an appropriate injunctive order should be entered. That being so, we are faced

---

6. 376 U.S. 247, at 253, 84 S.Ct. 773, at 777, 11 L.Ed. 680, at 685.

7. This would eliminate the oftentimes vexing question in a suit by the employer against the union, or union against the employer, for damages resulting from an unauthorized strike or lockout, whether that controversy had to be submitted to arbitration. This problem is exhaustively treated in Drake Bakeries v. Local 50, 1962, 370 U.S. 254, 82 S.Ct. 1346, 8 L. Ed.2d 474. Cases denying a stay pending arbitration are collected in Drake Bakeries v. Local 50, 2 Cir., 1961, 287 F.2d 155, 158 n. 4. In the Supreme Court opinion in Drake Bakeries, 370 U.S. 254, 264 n. 12, 82 S.Ct. 1346, Vulcan-Cincinnati, Inc. v. United Steelworkers, 6 Cir., 1961, 289 F.2d 103, is added to this list. The Court, 370 U.S. 254, 265 n. 14, 82 S.Ct. 1346, also noted decisions in which damage suits have been stayed. Signal-Stat Corp. v. Local 475, United Electrical, R. & M. W., 2 Cir., 1956, 235 F.2d 298; Yale & Towne Mfg. Co. v. Local Lodge No. 1717, International Ass'n of Machinists, 3 Cir., 1962, 299 F.2d 882, 883–884 n. 5.

directly with the problem whether the pendency of the unfair labor practice charges before the Labor Board afford any basis for denial of this relief.[8]

At the outset, we should emphasize that the issuance of a mandatory injunction to proceed with arbitration is not necessarily the end of it. This being an equitable proceeding, the trial court should retain jurisdiction over the case so long as reasonably required. When the arbiter's award has been rendered and perhaps the Labor Board decision announced, appealed, enforced, or vacated, the trial Court can see on the basis of facts actually developed in each of the proceedings—not the mere allegations of lawyers—whether, and to what extent, there is any real conflict between private arbitration and public labor law enforcement.

Proceeding with the arbitration will not disrupt or interfere with the Labor Board case. As a matter of fact the Board hearing, a very extensive one, has already been held. So far as cost or inconvenience of producing like or similar evidence before the arbiter is concerned, no policy defined in the Labor Act affords any immunity to the parties to an arbitration agreement. Also, from a factual standpoint there is only a limited similarity between the complaints pending before the Board and the principal one sought to be arbitrated. And as to this controversy over the discharges, the problems are not at all alike. The Union's brief points out well that the Employer for the most part labors under the fallacy of assuming that by the Board proceeding and arbitration, the Union is seeking to enforce a single right in two forums. Actually, there are quite separate rights involving separate legal and factual issues. In the arbitration proceeding, the Union is seeking to enforce the *contractual* right of employees not to be discharged "unjustly."[9] On the other hand, what is at issue in the Labor Board proceeding is the statutory rights of employees not to be discharged because of their union membership or because of anti-union discriminatory purposes on the employer's part. Indeed, so severely is the Board limited to the adjudication of statutory rights that it has no power to adjudicate contractual disputes. Sinclair Refining Co. v. N. L. R. B., 5 Cir., 1962, 306 F.2d 569, 576–78. In addition, although the charge sets the machinery in motion, once the complaint is issued the Board proceeding takes on a public character in which remedies are devised to vindicate the policies of the Labor Act, not afford private relief to employees. National Licorice Co. v. N. L. R. B., 1940, 309 U.S. 350, 362–63, 60 S.Ct. 569, 84 L.Ed. 799; Amalgamated Utility Workers v. Consolidated Edison Co., 1940, 309 U.S. 261, 265, 60 S.Ct. 561, 84 L.Ed. 738.

It takes no great imagination to envisage various decisions by Board or arbiter which, if standing alone, would deny all merited relief to the employees whereas the deficiency would be eliminated by a dual or parallel prosecution. Even more important, apart from the inconvenience or expense of a dual presentation of evidence, there seems little likelihood that any action of the arbiter could ever interfere with or frustrate any order of the Board in this case. If the Board concludes that the discharges were violations of the Act, reinstatement with back pay would follow as a matter of course regardless of the presence or absence of "justifiable" cause under the

---

8. Routine grievance No. 69 through 74, with the possible exception of No. 70, are all unrelated to the lockout or resulting discharge and no possible justification for denying arbitration as to these has been put forward.

9. That paragraph 2 of Art. XIV, Discharge, prescribed the remedy of reinstatement with back pay "in the same manner as provided under the Labor Management Relations Act of 1947" hardly makes a "federal" or "Labor Board" case. This merely eliminated another hurdle to effective arbitration. See Refinery Employees Union v. Continental Oil Co., 5 Cir., 1959, 268 F.2d 447, cert. denied, 1959, 361 U.S. 896, 80 S.Ct. 199, 4 L.Ed. 2d 152; Lodge No. 12, etc. v. Cameron Iron Works, 5 Cir., 1961, 292 F.2d 112.

contract. If the arbiter concludes the discharges were contractually unjustified, the policy of the Labor Act is in no way impinged even though the Board might hold on its record that there was no violation of the Act warranting a reinstatement and back pay order.

Of course the law is neither so inflexible nor unrealistic as to foreclose at this early developing stage the possibility that there may be circumstances in which the rightful, exclusive, primary jurisdiction of the Labor Board over a particular controversy forbids the commencement or continuation of a § 301 compelled arbitration. Though recognizing this possibility, Smith v. Evening News Association, 1962, 371 U.S. 195, 197, 83 S.Ct. 267, 9 L.Ed.2d 246, and Carey v. Westinghouse Electric Corp., 1964, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed. 2d 320, nonetheless permits a § 301 damage suit and arbitration, respectively. The principles and practices in our earlier Lodge No. 12, etc. v. Cameron Iron Works, 5 Cir., 1958, 257 F.2d 467, 472–73, have thus been substantially approved. And what is ordered here substantially parallels that approved in Local Union No. 702, etc. v. Central Illinois Public Serv. Co., 7 Cir., 1963, 324 F.2d 920; Package & Utility Drivers Local 396, IBT v. Hearst, S.D.Calif.1962, 206 F. Supp. 594; Local 410, Retail Shoe & Textile Salesmen's Union v. Sears Roebuck & Co., N.D.Calif.1960, 185 F.Supp. 558.[10] The latter two Courts cite our Cameron Iron Works case 5 Cir., 1958, 257 F.2d 467, with approval.

Nothing put forward by the Employer below or here justifies its re-

fusal to go on with the arbitration. For the entry of appropriate orders and further consistent proceedings,[11] the cause must therefore be remanded.

Reversed and remanded.

10. Kentile, Inc. v. Local 457, United Rubber Workers, E.D.N.Y., 1964, 228 F.Supp. 541, reflecting facts bringing into play the accepted principle that an arbiter's decision may never justify *violation* of the Act, Sinclair Refining Co. v. N.L.R.B., 5 Cir., 1962, 306 F.2d 569, at 574, is certainly not to the contrary.

11. The record shows a right to arbitration, a timely or excused demand and a flat refusal by the Employer for reasons

not legally sufficient. We perceive of no fact questions but leave this to the handling of the District Judge through summary judgment or otherwise to excise any fact genuinely in controversy for partial trial without delay. Arbitration is often a catalyst in labor peace because of its speed. Lodge No. 12, etc. v. Cameron Iron Works, 5 Cir., 1961, 292 F.2d 112; Sinclair Refining Co. v. N.L.R.B., 5 Cir., 1962, 306 F.2d 569.