**In re UNITED STATES of America, Petitioner.**

**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Manuel Blanco GARCIA, et al., Defendants-Appellees.**

Nos. 86–5579, 86–5604.

United States Court of Appeals, Eleventh Circuit.

May 18, 1988.

Leon B. Kellner, U.S. Atty., Elizabeth Ruff-Stein, Asst. U.S. Atty., Miami, Fla., Robert Kendall, Jr., Asst. Dir., Office of Immigration Litigation, Civil Div., Dept. of Justice, Washington, D.C., for petitioner.

Robert Kendall, Jr., U.S. Dept. of Justice/Civil Div., Washington, D.C., Elizabeth Ruf Stein, Special Asst., U.S. Atty., Miami, Fla., for plaintiff-appellant.

Andrew S. Berman, Spencer, Bernstein, Seemann & Klein, P.A., Miami, Fla., for Culmer.

Bonnie Rippingille, Coral Gables, Fla., for Carlos Lopez Aguiar & Edelberto Rodriguez.

Andrew L. Waks, Waks & Barnett, Miami, Fla., for Angel Torres-Ruiz.

Alfred K. Frigola, Marthon, Fla., for Juan Antonio Paan.

Robert J. Gorman, Ft. Pierce, Fla., for Gatchell.

On Petition for Writ of Mandamus

KRAVITCH and CLARK, Circuit Judges, and ESCHBACH [*], Senior Circuit Judge.

CLARK, Circuit Judge:

## I. BACKGROUND

This is another appeal associated with the United States' ongoing efforts to collect fines from the owners and operators of vessels who participated in the 1980 Mariel Boatlift of Cuban nationals into the United States. Before the court are 62 consolidated cases in which the United States seeks to collect fines in accordance with 8 U.S.C. § 1323. This statute provides that persons who bring undocumented aliens into the United States "shall pay ... the sum of $1,000 for each alien so brought." When the defendants returned from Cuba, the Immigration and Naturalization Service ("INS" or "the Service") served them with a "Notice of Intention to Fine." Following administrative adjudication of the noticed fines, the Service issued demand letters for payment. When the defendants failed to pay the fines, the Service referred these cases to the United States Attorney for the Southern District of Florida for the institution of civil collection actions. *See* 8 U.S.C. §§ 1329 (district court jurisdiction); 1330 (suits for enforcement).

This much of the case is simple, and follows a pattern consistent with some 900 additional, identical suits filed by the United States. Of the total number of suits filed in the Southern District of Florida, some 60 to 90 were assigned to each active district judge sitting at the time. The district judge responsible for these 62 cases dismissed all of them in July 1985 for failure to state a claim. In a boilerplate order issued *sua sponte* in each case, the district court granted the United States 30 days leave to amend its complaint; such amendment would have had the effect of "reinstating" each individual action. As a condition precedent to filing an amended complaint, the court required the government to include certain specific allegations.[1]

The government appealed the dismissals after the 30 days had expired, and so ended the straightforward procedural history of these actions.

On October 22, 1985, this court requested the parties to respond to a jurisdictional query. On December 23, 1985, we dismissed the appeals for lack of jurisdiction without opinion. In February 1986, the government filed motions before the district court seeking to have the court reconsider its *sua sponte* orders of dismissal. In March 1986, these motions were denied as "grossly untimely." In a final attempt to have the district court reconsider its orders of dismissal, in May 1986, the government filed motions seeking to have all 62 cases remanded to INS for reconsideration in light of *Pollgreen v. Morris*, 770 F.2d 1536 (11th Cir.1985), and related deci-

---

[*] Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. The district court's order reads as follows:
   3. Any amended complaint shall incorporate and include the following specific allegations, deemed by the Court to be necessary in presenting a *prima facie* case of these "quasi criminal" actions:
   (a) that Defendants intended to violate the laws of the United States in transporting the undocumented Cuban nationals from Mariel, Cuba to Southern Florida;
   (b) that Defendants had not received permission from Government officials or relied on official pronouncements in transporting undocumented Cuban nationals from Mariel, Cuba, to Southern Florida;
   (c) that Defendants had not previously been named parties, plaintiffs or defendants, in another action filed in this court and arising out of the transporting of undocumented Cuban nationals from Mariel, Cuba, to Southern Florida in the "Cuban Refugee Freedom Flotilla";
   (d) that Defendants had not acted under duress or coercion in transporting the undocumented Cuban nationals from Mariel, Cuba, to Southern Florida; and
   (e) that Defendants knew or could have known, through the exercise of reasonable diligence, that the Cuban nationals transported from Mariel, Cuba, to Southern Florida in the "Cuban Refugee Freedom Flotilla" were required to have visas to enter the United States.

sions.[2]

## II. JURISDICTION

■ Admittedly, the government is, as a matter of jurisdiction, "between a rock and a hard place." This court has indicated that it did not consider the district court's orders of dismissal to be final, and hence appealable, while the district court says that its orders were final. An intervening development in the law of this circuit has relieved this jurisdictional pressure.

In *Schuurman v. Motor Vessel "Betty K V"*, 798 F.2d 442 (11th Cir.1986), the district court granted a defendant's motion to dismiss for lack of *in personam* jurisdiction, but allowed the plaintiff 20 days from the date of the dismissal order to amend the complaint. The district court then denied the plaintiff's motion for reconsideration. The plaintiff failed to amend, believing that the denial of his motion for reconsideration was final. An appeal followed. We reviewed our decision in *Czeremcha v. International Association of Machinists*, 724 F.2d 1552 (11th Cir.1984), along with *United States v. Mayton*, 335 F.2d 153 (5th Cir.1964), and *United Steelworkers v. American International Aluminum Corp.*, 334 F.2d 147 (5th Cir.1964), *cert.*

*denied*, 379 U.S. 991, 85 S.Ct. 702, 13 L.Ed.2d 611 (1965), and held that

[i]n dismissing the complaint, the district court may also provide for a stated period within which a plaintiff may amend the complaint. If the plaintiff does not amend the complaint within the time allowed, no amendment may be made absent leave of court, and the dismissal order becomes final at the end of the stated period. For appeal purposes, we hold that the order of dismissal in this situation becomes final upon the expiration of the time allowed for amendment.

798 F.2d at 445.[3] In accordance with the rule announced in *Schuurman*, the district court's orders of dismissal became final when the United States failed to amend its complaints within the period specified by the district court.[4] This court, therefore, has jurisdiction over these appeals.

## III. ELEVENTH CIRCUIT FLOTILLA JURISPRUDENCE

In *Pollgreen*, vessel owners and operators like the defendants here sued to challenge section 1323 fines and the seizure of vessels which had resulted from their participation in the Mariel Boatlift. INS had determined that duress was not a defense to penalties incurred under section 1323.[5]

---

**2.** The final twist in this history results from the government's petition, carried with these appeals, for a writ of mandamus. Specifically, the government has asked the court to order the district court to remand all 62 to INS. As our disposition of these cases indicates, we have no occasion to reach the merits of the government's petition.

**3.** We also held that

[t]he time for appeal is measured from the date on which the district court order of dismissal becomes final. In this situation, the plaintiff need not wait until the expiration of the stated time in order to treat the dismissal as final, but may appeal prior to the expiration of the stated time period. Once the plaintiff chooses to appeal before the expiration of time allowed for amendment, however, the plaintiff waives the right to later amend the complaint, even if the time to amend has not yet expired.

798 F.2d at 445.

**4.** Prior to our decision in *Schuurman*, such a result was not compelled by other decisions of this court, namely, *Czeremcha*. In that case, the district court dismissed the plaintiff's complaint

for failure to invoke the court's subject matter jurisdiction. The court also denied the plaintiff's motion for leave to amend. The plaintiff sought to appeal the denial of this motion. We noted that our jurisprudence in this area had "indicated that a plaintiff has the choice either of pursuing a permissive right to amend a complaint after dismissal or of treating the order as final and filing for appeal." 724 F.2d at 1554 (citing *Mayton; United Steelworkers, supra*). We held nonetheless that an order of dismissal "does not automatically terminate the action unless the court holds either that no amendment is possible or that the dismissal of the complaint also constitutes a dismissal of the action." 724 F.2d at 1554. In light of *Schuurman*, it is now clear that *Czeremcha* does not reach the situation presented here.

**5.** Typically, vessel owners and operators claim that agents of the Cuban government forced them to take on passengers who were undocumented Cuban nationals. In many instances, owners and operators were denied access to family members and friends, or were denied permission to leave Mariel Harbor, unless they accepted the passage of persons with whom they had no connection.

The district court disagreed and concluded that duress was available in efforts to mitigate and defend against penalties assessed under this statute. Having found that duress was established on the record before it, the district court ordered the remission of the fines assessed by INS and the release of vessels seized.

We established conclusively that duress *is* a defense to fines imposed under section 1323, 770 F.2d at 1538, 1544, but reversed the district court because it had decided the factual question of duress *de novo. Id.* at 1544; *see also Lyden v. Howerton,* 783 F.2d 1554, 1155 (11th Cir.1986) ("It is now the settled law of this circuit that duress is available as a defense to violations of 8 U.S.C. § 1323."). We directed the district court to remand the individual vessel owners' cases to INS "for rehearing, reconsideration, and redetermination ... on such new or further evidence as the agency in the first instance, deems appropriate on the issue of duress." *Id.* at 1546.

*Lyden* arose in a fashion similar to *Pollgreen.* As in *Pollgreen,* the district court found that the vessel owners and operators had made out a defense of duress. We again held that remand to INS was appropriate since the agency had misapplied the law.[6]

In *Lyden,* we described the position of INS, as evidenced by decisions of the Board of Immigration Appeals ("BIA"), which obtained prior to our decision in *Pollgreen. See, e.g., In re M.V. Solemn Judge,* 18 I & N Dec. 186 (B.I.A.1982).[7] INS processed the fines imposed during the Mariel Boatlift while under the view that "even if duress were available in mitigation the owners forfeited that right by going to Cuba to perform an illegal act, thereby placing themselves in danger of duress." *Lyden,* 783 F.2d at 1556. (citing *Solemn Judge, supra* ).[8] Consequently, until the matter was resolved by this court, INS operated under the "erroneous belief that section 1323 is a strict liability statute without defense." *Lyden,* 783 F.2d at 1557.

## IV. THE GOVERNMENT'S POSITION

The government raises two basic arguments on appeal. First, it contends that the district court erred in holding that the complaints filed in these cases failed to state a claim. With this basic contention we must agree. The complaints filed in all 62 cases allege (1) the presence of jurisdiction; (2) that the defendant(s) in question brought a certain number of undocumented aliens into the United States in violation of section 1323; (3) that INS served the defendant(s) in question with a Notice of Intention to Fine which described the violationl; (4) that the propriety of a fine was adjudicated administratively; and (5) that the fine remains unpaid.[9] In dismissing these complaints, it is clear that the district court failed to adhere to the well-established principle that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

---

**6.** Our decision in *United States v. Armendaris,* 790 F.2d 860 (11th Cir.1986), appears to conflict somewhat with *Pollgreen* and *Lyden* insofar as it affirmed a district court finding of duress when this issue had not been considered by INS. As the *Armendaris* panel noted, however, prior history of the case indicated that " 'it would have been absolutely futile for [Armendaris] to have raised a claim of duress or coercion in the administrative proceeding.'" *Id.* (quoting *United States v. Sanchez,* 709 F.2d 1353 (11th Cir. 1983) (denying rehearing in *United States v. Sanchez,* 703 F.2d 580 (11th Cir.1983) (unpublished order)). Moreover, the panel in *Armendaris* took note of *Pollgreen* and *Lyden* and did not indicate the presence of a conflict. *See* 790 F.2d at 862 n. 6.

**7.** "*Solemn Judge* is the basic decision on which the agency relied for its decisions in all these cases...." *Lyden,* 783 F.2d at 1556 n. 2.

**8.** The BIA stated its position this way:
It is important to note that fines under section 273 of the Act [8 U.S.C. § 1323] are imposed without regard to the intentions of the carrier. It is not necessary for there to be a willful disregard of United States law. Under section 273, the carrier becomes in effect, an insurer that its passengers have met the visa requirements of the Act. Any bringing to the United States of an alien who does not meet these requirements incurs liability.
*Solemn Judge,* 18 I & N Dec. at 188.

**9.** A representative example of these complaints is reproduced at Appendix A.

relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), *quoted in Friedlander v. Nims,* 755 F.2d 810, 813 (11th Cir.1985). We have no doubt that these complaints "g[a]ve the defendant[s] fair notice of what the plaintiff's claims [are] and the grounds upon which [they] rest[ ]." *Conley,* 355 U.S. at 47, 78 S.Ct. at 103.[10]

■ The government also contends that the district court erred in denying its motions to have these cases remanded to INS for reconsideration in light of *Pollgreen* and *Lyden.* It urges this court to require the district court to so remand all 62 cases. Although many of these cases may ultimately be remanded to INS, we cannot now direct the district court to so remand them because we are without authority to issue such an order. This case is unlike *Pollgreen* and *Lyden* in one crucial respect. We reversed the district courts in those cases because they had made *de novo* findings of fact on the basis of administrative records before them. The cases were remanded so that INS would have the opportunity to apply a correct legal standard.[11] Here, in contrast, the district court made no findings. Indeed, with but a few exceptions, as a result of the district court's quick dismissal of these actions, the underlying administrative records are not before the court.

■ We have already taken note of the fact that, prior to the filing of these enforcement actions, INS's view of the availability of defenses to penalties assessed under section 1323 was "erroneous." As the administrative records in nearly all these cases are not before us, however, we have no occasion to evaluate INS's actions with respect to most of these defendants. *See Pollgreen,* 770 F.2d at 1545 (judicial review limited to record compiled before the agency) (citing *United States v. Carlo Bianchi & Co.,* 373 U.S. 709, 714–15, 83 S.Ct. 1409, 1413–14, 10 L.Ed.2d 652 (1963)). With the exception of the few cases in which we can determine from the administrative record that INS committed some error, these cases are not ripe for remand to INS.[12]

## V. POSTURE AND DISPOSITION OF THE INDIVIDUAL CASES

Although the district court's orders of dismissal must be vacated, this does not end the matter before the court. For more than one year the government has treated all 62 of these cases as if they were identical. Before the district court issued its orders of dismissal, however, the cases were in a variety of postures. We note with displeasure the United States' failure to call the court's attention to the differences in these various cases. In particular, we are deeply concerned by the fact that a substantial number of these defendants were never served with process. In the interest of securing an orderly and fair disposition of these cases, we must account

---

**10.** Although the district court appears to have anticipated at least one aspect of our decisions in *Pollgreen* and *Lyden,* it erred nonetheless in requiring the government to plead affirmatively that the defendants had not acted under coercion or duress. *See* note 1, *supra.*

**11.** Our decisions were based on this rule:

When an administrative agency has made an error of law, the duty of [a court] is to "correct the error of law committed by that body, and, after doing so to remand the case to the [agency] so as to afford it the opportunity of examining the evidence and finding the facts as required by law."

*N.L.R.B. v. Enterprise Association,* 429 U.S. 507, 522 n. 9, 97 S.Ct. 891, 900 n. 9, 51 L.Ed.2d 1 (1977) (citation omitted), *cited in Pollgreen,* 770 F.2d at 1544; *Lyden,* 783 F.2d at 1557.

**12.** The district court made no findings even in those cases in which one of the parties presented to the court some portion of the administrative record. We may nevertheless order a remand to INS in cases fitting this description if it is clear that INS committed some legal error. This is because our review of an administrative record is wholly independent of that of the district court. *See Walter O. Boswell Mem. Hospital v. Heckler,* 749 F.2d 788, 790 (D.C.Cir.1984) (district court review of administrative record is accorded no particular deference); *accord, Louisiana Environmental Society, Inc. v. Dole,* 707 F.2d 116, 119 (5th Cir.1983); *Committee for an Independent P–I v. Hearst Corp.,* 704 F.2d 467, 471–72 (9th Cir.), *cert. denied,* 464 U.S. 892, 104 S.Ct. 236, 78 L.Ed.2d 228 (1983); *Brown v. U.S. Dept. of Interior,* 679 F.2d 747, 748–49 (8th Cir. 1982).

for the fact that they are by no means identical.

Accordingly, the orders of dismissal for failure to state a claim must be vacated. The consolidated cases are remanded for disposition as follows:

█ (1) In the following cases, in which service was perfected as to all defendants, the district court shall direct the United States to make available to it the administrative record developed by INS: *United States v. Pupo,* No. 85–1000–CIV–HASTINGS;[13] *United States v. Diaz,* No. 85–1015–CIV–HASTINGS; *United States v. Machado,* No. 85–1262–CIV–HASTINGS; *United States v. Lluis,* No. 85–1338CIV–HASTINGS; *United States v. Alvarez,* No. 85–1367–CIV–HASTINGS; *United States v. Garcia,* No. 85–1456–CIV–HASTINGS; *United States v. Camblor,* No. 85–1518–CIV–HASTINGS; *United States v. Gatchell,* No. 85–1587–CIV–HASTINGS; *United States v. Matilla,* No. 85–1768–CIV–HASTINGS; *United States v. Voight,* No. 85–1887–CIV–HASTINGS; *United States v. RM Charters, Inc.,* No. 85–1926–CIV–HASTINGS; *United States v. Jones,* No. 85–2100–CIV–HASTINGS; *United States v. Perez–Rodriguez,* No. 85–2315–CIV–HASTINGS; *United States v. Torres–Ruiz,* No. 85–2391–CIV–HASTINGS. If it appears from examination of the administrative record in any of these cases that INS did not recognize the defendants' right to avail themselves of the defenses outlined in *Pollgreen* and *Lyden,* the district court shall remand such cases to INS for further consideration in light of those decisions. If

it appears from the administrative record in any of these cases that such record is any way factually incomplete, so as to impair the district court's ability to determine the propriety of the fines imposed by INS, the district court shall remand such cases to INS for the purposes of completing the record.[14] In cases where remand to INS is deemed inappropriate, the district court shall proceed to adjudication.

█ (2) In all those cases in which service was never perfected as to any defendant, the district court shall order the United States to perfect service within 120 days as required by Fed.R.Civ.P. 4(j).[15] Should the United States not so perfect service, the district court shall dismiss the action, in accordance with the aforementioned rule. Cases falling into this category are: *United States v. Stone,* No. 85–1089–CIV–HASTINGS; *United States v. Aleman,* No. 85–1439–CIV–HASTINGS; *United States v. Curbelo,* No. 85–1529–CIV–HASTINGS; *United States v. Gonzalez,* No. 85–1179–CIV–HASTINGS; *United States v. Medrano,* No. 85–1621–CIV–HASTINGS; *United States v. Resler,* No. 85–1642–CIV–HASTINGS; *United States v. Filgueikas,* No. 85–1902–CIV–HASTINGS; *United States v. Barrs,* No. 85–2047–CIV–HASTINGS; *United States v. Prado,* No. 85–2079–CIV–HASTINGS; *United States v. Abreu,* No. 85–2111–CIV–HASTINGS; *United States v. Marrero,* No. 85–2136–CIV–HASTINGS; *United States v. Gonzales-Ferrell,* No. 85–2179–CIV–HASTINGS; *United States v. Exposito,* No. 85–2214–CIV–HASTINGS; *United States v. Jimenez,* No. 85–2225–

---

**13.** For the purposes of identification, docket numbers used here are those of the district court.

**14.** "If the decision of the agency 'is not sustainable on the administrative record made, then the ... decision must be vacated and the matter remanded ... for further consideration.'" *Federal Power Comm'n v. Transcontinental Gas Pipe Line Corp.,* 423 U.S. 326, 331, 96 S.Ct. 579, 582, 46 L.Ed.2d 533 (1976) (quoting *Camp v. Pitts,* 411 U.S. 138, 143, 93 S.Ct. 1241, 1244, 36 L.Ed. 2d 106 (1973)).

**15.** Rule 4(j) provides:

If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party

on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice *upon the court's own initiative with notice to such party or upon motion.*
Fed.R.Civ.P. 4(j) (emphasis added). As the text of the Rule indicates, dismissal for failure to execute service "may be made upon motion, or upon the court's own initiative, with notice." 2 *Moore's Federal Practice* ¶ 4.46 at 4–431 (1987). Dismissals pursuant to this rule require that the court give notice to a plaintiff and that the plaintiff be given an opportunity to show good cause why an action should not be dismissed.

CIV–HASTINGS; *United States v. Vidal*, No. 85–2252–CIV–HASTINGS; *United States v. Nunez-Paez*, No. 85–2304–CIV–HASTINGS; *United States v. Gonzalez*, No. 85–2357–CIV–HASTINGS; *United States v. Young*, No. 85–2407–CIV–HASTINGS.

(3) In all those cases in which service was perfected as to one or more, but not all, defendants, the district court shall treat properly served defendants in accordance with paragraph (1) of this section. Defendants who have not been served shall be treated in accordance with paragraph (2) of this section. Cases falling into this category are: *United States v. Campbell*, No. 85–1221–CIV–HASTINGS; *United States v. Pedrera*, No. 85–1428–CIV–HASTINGS; *United States v. Mitchell*, No. 85–1470–CIV–HASTINGS; *United States v. Minnick*, No. 85–1653–CIV–HASTINGS; *United States v. Tobias Leiva*, No. 85–1789–CIV–HASTINGS; *United States v. Arocha*, No. 85–1869–CIV–HASTINGS; *United States v. Marquez*, No. 85–1938–CIV–HASTINGS; *United States v. Lopez*, No. 85–1979–CIV–HASTINGS; *United States v. Wyles*, No. 85–2158–CIV–HASTINGS; *United States v. Corton*, No. 85–2190–CIV–HASTINGS; *United States v. Davis*, No. 85–2380–CIV–HASTINGS; *United States v. Torres*, No. 85–2418–CIV–HASTINGS.

(4) In *United States v. Krot Enterprises*, No. 85–2288–CIV–HASTINGS, service was not perfected as to defendant Krot Enterprises. Service was perfected as to defendant George Vivas but the United States, pursuant to Fed.R.Civ.P. 41(a)(1)(i), voluntarily dismissed him from the case prior to the district court's *sua sponte* dismissal of the action. Defendant Krot Enterprises shall be treated in accordance with paragraph (2) of this section.

(5) In *United States v. Sharp*, No. 85–2335–CIV–HASTINGS, the defendant filed a motion to quash service prior to the district court's order of dismissal. The district court shall consider the merits of this motion and proceed in accordance with paragraphs (1) and (2) of this section.

(6) In *United States v. Lopez-Aguiar*, No. 85–2036–CIV–HASTINGS, service was perfected as to defendant Rodriguez, but not as to defendant Lopez-Aguiar. Defendant Rodriguez shall be treated in accordance with paragraph (1) of this section. In a motion to dismiss filed prior to the district court's orders of dismissal, defendant Lopez-Aguiar challenged the sufficiency of process. The district court shall consider the merits of this contention and proceed in accordance with paragraphs (1) and (2) of this section.

(7) In *United States v. Rodriguez*, No. 85–1127–CIV–HASTINGS, service was perfected as to defendant Bacallao, but not as to defendant Rodriguez. The United States moved for a default judgment against defendant Bacallao, which motion was granted and then vacated by the district court. The district court shall treat defendant Rodriguez in accordance with paragraph (2). The district court's order vacating the entry of default judgment against defendant Bacallao is hereby vacated. Defendant Bacallao shall be permitted to ask the court to reconsider its entry of default judgment in accordance with Fed.R. Civ.P. 55(c), 60(b).

(8) The consent judgment entered by the district court in *United States v. Martinez*, No. 85–1610–CIV–HASTINGS, prior to its order of dismissal, is to be enforced according to its terms unless the parties, upon notice, seek modification of such order and the district court determines that reasons exist for modification.

(9) In *United States v. Mesa*, No. 85–1285–CIV–HASTINGS, a default judgment was entered and then vacated in light of the district court's decision to dismiss all 62 complaints. Accompanying the United States' motion for a judgment of default is the final decision of the INS District Director who determined that the defendant was liable for a portion of the noticed fines. From this limited portion of the administrative record, it is clear that INS improperly assessed the validity of the defendant's claimed defenses. The district court shall remand this case to INS for further consideration in light of *Pollgreen* and *Lyden*.

(10) In *United States v. Pantoja*, No. 85–1054–CIV–HASTINGS, the United States moved for default judgment against defendant Ernesto Pantoja; the district court clerk entered a judgment of default. It is clear from that portion of the administrative record which accompanied the United States' motion for default judgment that the decision of the INS District Director to impose a fine against defendants Ernesto Pantoja and Eugenio Pantoja was based, at least in part, on an erroneous interpretation of section 1323. The district court shall vacate the default judgment and remand the case to INS for further consideration in light of *Pollgreen* and *Lyden*.

(11) In *United States v. Gutierrez*, No. 85–1205–CIV–HASTINGS, the district court clerk entered a default judgment against the defendant. The district court shall consider the propriety of this default judgment; if the court determines that a default judgment was not in order, it shall proceed in accordance with paragraph (1) of this section.

(12) In *United States v. Barredo*, No. 85–1356–CIV–HASTINGS, it is clear from the decision of the District Director of INS, attached to the defendant's motion to dismiss, that INS relied on an erroneous interpretation of section 1323. The district court shall remand this case to INS for further consideration in light of *Pollgreen* and *Lyden*.

(13) In *United States v. Culmer*, No. 85–1399–CIV–HASTINGS, it is clear from the decision of the District Director of INS, attached to a memorandum of law filed by defendant Culmer, that INS relied on an erroneous interpretation of section 1323. The district court shall remand this case to INS for further consideration in light of *Pollgreen*, and *Lyden*.

(14) In each of the following cases, the defendants, by way of answer or motion to dismiss, claim that they were plaintiffs in declaratory actions (apparently *Pollgreen* and *Lyden*) involving the subject fines: *United States v. Sims*, No. 85–1142–CIV–HASTINGS; *United States v. Impollome-*

ni, No. 85–1239–CIV–HASTINGS; *United States v. Hager*, No. 85–1308–CIV–HASTINGS; *United States v. Phelps*, No. 85–1410–CIV–HASTINGS; *United States v. Paan*, No. 85–1493–CIV–HASTINGS; *United States v. Lynn*, No. 85–2241–CIV–HASTINGS. The district court shall determine the validity of these claims. If it appears that the United States' right to impose a fine against these defendants (for the same conduct which is the subject of the instant actions) has been adjudicated or is otherwise under the consideration of INS or a court of law, the district court shall dismiss these actions. Otherwise, the defendants shall be treated in accordance with section (1) of this section.

(15) The records in *United States v. Diaz*, No. 85–1845–CIV–HASTINGS, and *United States v. Rourk*, No. 85–1296–CIV–HASTINGS, are incomplete or contain improperly filed documents. The district court shall require the United States to demonstrate that the defendants in this case were duly served with process. The district court shall then proceed according to paragraphs (1) and (2) of this section.

We note that the records in many of these cases may be incomplete or contain incorrect information due to their sheer volume and the burdens that they have imposed upon the district court and the court clerk. Should the district court determine that any of the foregoing classifications and descriptions of these cases is incorrect, it shall proceed in a manner consistent with this opinion. We note further that in only one of the 62 cases has a defendant had an active role in the briefing and arguing of these appeals. One law firm filed a brief on behalf of the remaining defendants, but with one exception, there is no indication that these defendants chose to adopt the position taken therein. Moreover, there are indications that the service list contains clerical errors and is out of date.[16] The district court is directed to take whatever steps are necessary to ensure that no defendant's rights are impaired as a result of a lack of notice.

---

**16.** We note that this court's clerk reports that regular mail sent to the addresses of at least two dozen of the defendants on the service list is returned as undeliverable.

VACATED and REMANDED with instructions.

## APPENDIX A

UNITED STATES OF
AMERICA, Plaintiff,

vs.

JACK LYNN and DONALD
DIEHL, Defendants.

**No. 85–2241.**

United States District Court,
S.D. Florida.

## COMPLAINT

The United States of America, plaintiff, by the United States Attorney for the Southern District of Florida, for its complaint states as follows:

1. This is a civil action brought by the United States of America pursuant to 8 U.S.C. §§ 1329 and 1330, and 28 U.S.C. § 1345.

2. The conduct complained of by plaintiff occurred within this judicial district. The defendants reside or can be found within this judicial district.

3. On or about May 16, 1980 at Key West, Florida, the vessel KEY WESTER, owned or commanded by defendants, Jack Lynn and Donald Diehl, brought into or landed in the United States from outside thereof 60 Cuban Nationals who did not have required valid unexpired visas, in violation of 8 U.S.C. § 1323(a).

4. The defendants were duly served by the U.S. Immigration and Naturalization Service with Form I–79, Notice of Intention to Fine. The Notice of Intention to Fine informed the defendants: (1) of the fine for violation of the above-cited statute; (2) of their right to file a written defense within a period of 30 days; and (3) of their right to a personal interview.

5. A written defense was filed by the defendants. The District Director of the Immigration and Naturalization Service after a personal interview advised the defendants in writing at their last known addresses of the decision to impose fine of $60,-000.00 for this violation, pursuant to 8 U.S. C. § 1323(b).

6. Payment of the fine assessed has not been received from the defendants pursuant to the provisions of 8 U.S.C. § 1330.

Wherefore, plaintiff, United States of America, requests judgment against defendants, Jack Lynn and Donald Diehl, directing that defendants pay the said amount, plus taxed costs.

STANLEY MARCUS
UNITED STATES ATTORNEY
By: Elizabeth Ruf Stein
ELIZABETH RUF STEIN
Special Assistant U.S. Attorney
155 South Miami Avenue
Miami, Florida 33130–1693
Tel. (305) 350–4425

KRAVITCH, Circuit Judge, specially concurring:

I concur in the court's disposition of these cases. I further agree that the jurisdictional issue is squarely controlled by *Schuurman v. Motor Vessel "Betty K V",* 798 F.2d 442 (11th Cir.1986) (per curiam). I write separately to express my concern that *Schuurman* may be in conflict with the principles expressed in *Jung v. K. & D. Mining Co.,* 356 U.S. 335, 78 S.Ct. 764, 2 L.Ed.2d 806 (1958) (per curiam), and *Czeremcha v. International Association of Machinists,* 724 F.2d 1552 (11th Cir.1984).

In *Jung,* the plaintiffs filed a complaint alleging violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. The plaintiffs thereafter filed a first amended complaint. The district court granted the defendant's motion to dismiss the first amended complaint for failure to state a claim. In its dismissal order, the district court granted the plaintiffs "twenty days from this date within which to file [another] amended complaint." In a second order, the district court granted an additional twenty days for the filing of an amended complaint. The plaintiffs did not file another amended complaint or do anything further in their lawsuit for two more years, when they informed the district court that they elected to stand on their first amended complaint. The district

court then entered an order dismissing the cause of action.

The Supreme Court held that the last order dismissing the cause of action, not the first order dismissing the amended complaint, was the final, appealable order. Although the Court recognized that it was condoning the plaintiffs' delay in informing the court that they elected to stand on the first amended complaint, it concluded that "[t]he undesirability of useless delays in litigation is more than offset by the hazards of confusion or misunderstanding as to the time for appeal." 356 U.S. at 337, 78 S.Ct. at 766.

The principle of *Jung*, as I view it, is that the burden lies with the parties to request the district court to enter a final order if there is ambiguity as to whether a district court's order dismissing a complaint also constitutes a dismissal of the cause of action. This ambiguity is most likely to be present in cases like *Jung, Schuurman*, and the case at bar, where the district court literally invites the plaintiff to amend its complaint. The ambiguity also will be present in cases like *Czeremcha*, where the district court, by its extensive discussion of the fact that the plaintiff had proceeded under the wrong statute, sent a strong hint to the plaintiff that he could amend his complaint. *See* 724 F.2d at 1555. In such a case, the district court's order of dismissal does not really amount to a decision "that all relief shall be denied." Fed.R.Civ. P. 58; *see Jung,* 356 U.S. at 337, 78 S.Ct. at 766. Moreover, the parties can easily protect their rights by requesting entry of final judgment pursuant to Rule 58. By making such a request in this case, the United States could have obtained a final, appealable order, and the defendants could have put an end to the case in the district court and started the clock of Fed.R.App.P. 4(a) running.[1]

In *Schuurman*, we concluded that the district court's order dismissing the complaint automatically became a final order

dismissing the cause of action after the lapse of the period that the district court explicitly granted for amendment of the complaint. We stated that "[t]he rule set forth herein averts the possibility of uncertainty as to whether the dismissal of a complaint constitutes a final judgment." 798 F.2d at 445. The rule adopted by this court in *Schuurman* does solve the problem of uncertainty, but it solves it differently than did the Supreme Court in *Jung*. The bar may well be confused when one rule tells attorneys when an order becomes final for appealability purposes and another rule governs finality for timeliness purposes. In such technical areas of civil procedure, we should choose one, clear rule.

---

1. I do not intend to imply any criticism of the government's decision to appeal the district court's rejection of its motions for reconsideration and remand. The district court clearly did not share the court of appeals' view of the procedural posture of this case. Both *Jung* and *Czeremcha* were on the books, however, when the district court entered its order dismissing the government's complaint. The government could have sought clarification of that order.