[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-12616

_____

RICHARD BURT,

                                Plaintiff-Appellant,

*versus*

PRESIDENT OF UNIVERSITY OF FLORIDA,
DAVID E. RICHARDSON,
MARY WATT,
SIDNEY DOBRIN,

                                Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

D.C. Docket No. 1:22-cv-00075-MW-HTC

_____

Before WILLIAM PRYOR, Chief Judge, GRANT, and KIDD, Circuit Judges.

GRANT, Circuit Judge:

This civil procedure case looks a lot like a First Amendment appeal. In fall 2021, the University of Florida decided it was time to return to complete in-person instruction after lengthy "remote learning" during the Covid-19 pandemic. Richard Burt, a tenured professor of English, strongly disagreed with that administrative choice—to say the least. He emailed his students that the University was forcing him to return to the classroom against his will, attaching for good measure an email thread between him and the department chair. He also signed his email, "Herr Doktor Rev. Professor Blind Burt Ph.4KUltaHD, Department of loser Studies, Pharmakonology, and Cosmic Criticism."

The University was unamused, in part because Burt had already been chided for poor email etiquette; the plan was to suspend him for five days without pay and require administrative concessions like email professionalism. But instead of agreeing to those conditions, Burt sued, claiming free speech and procedural due process violations.

Even so, those issues will take a back seat here to a milder matter of civil procedure: did Burt file his appeal on time? Burt says yes—he filed less than thirty days after the district court separately

entered its final judgment. As relevant here, the deadline under Federal Rule of Appellate Procedure 4(a)(1)(A) is thirty days after a final judgment. But in *Schuurman v. Motor Vessel Betty K V*, we created a rule defining the appeal period for dismissals like this one. 798 F.2d 442, 445 (11th Cir. 1986). Under that rule, the judgment was considered final on the last day the court set for Burt to amend his complaint. And that's true even though Burt did not amend, and even though the court did not issue a final order on that date.

Our rule is admittedly somewhat idiosyncratic. And maybe even in tension with a Supreme Court case that preceded it—plus the now-revised Federal Rules of Civil Procedure. But none of that makes it any less our rule. So because Burt filed his notice of appeal outside the *Schuurman* window, we lack jurisdiction to consider it.

**I.**

Richard Burt has been an English professor at the University of Florida since 2003.[1] In August 2021, Burt remained worried about teaching in the classroom, even more than a year into the Covid-19 pandemic. He was sixty-seven years old, suffered from several health challenges, and had received "only two of the three vaccinations."

So when the University announced to the faculty that remote classes would not be allowed starting that fall, Burt was

---

[1] Because this case comes to us on a motion to dismiss, we accept the complaint's factual allegations as true and construe them in Burt's favor. *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1177 (11th Cir. 2025).

outraged. After skipping an English Department meeting to discuss the transition back to in-person classes, plus some back and forth with the department chair, Burt emailed his students to let them know that his class would meet remotely. He attached a statement from the faculty union's president criticizing the University's "poor compliance with CDC guidelines on Covid." When one student complained and dropped the class, the department chair again approached Burt on the issue—and Burt again volleyed back emails with various questions and challenges, the true nature of which are disputed by the parties.

Not disputed is what Burt did next. In a second email to his students, he declared that "he had been ordered, by his Chair, against his will, to teach his classes face-to-face." He continued: "You may stop reading here. If you want to learn what happened, you may keep reading. YOU ARE NOT REQUIRED TO KEEP READING. YOU MAY STOP HERE." He then attached a reproduction of his email exchange with the English Department chair, and signed off with a nonsensical series of words: "Herr Doktor Rev. Professor Blind Burt Ph.4KUltaHD, Department of loser Studies, Pharmakonology, and Cosmic Criticism."

The University acted swiftly, reassigning Burt's courses to another professor and placing him on paid administrative leave pending investigation. Administrators ultimately determined that he had violated two school regulations relating to disruptive behavior and faculty misconduct, as well as the faculty's collective bargaining agreement with the University.

Based on these conclusions, the University proposed suspending Burt for five days without pay.[2]  The Dean of the College of Liberal Arts and Sciences and the English Department chair also signed an official letter to Burt, calling his behavior "improper and unprofessional."  The letter instructed Burt to comply with University policies; to ensure that all "student-related email communications" were professional and relevant to course content; to take classes in "email effectiveness"; and to use a correct email signature block.  After all, Burt had been "previously admonished" for using the odd email signature block that he had affixed to his latest email.  Any future violations, the letter warned, would result in his termination.

Burt sued, arguing that he had been punished for First Amendment protected activity, and that the University's "kangaroo court proceeding" had violated his procedural due process rights.  The district court dismissed the complaint.  It left open the possibility that "this might be a different case" if Burt were a professor of infectious diseases and quoted experts criticizing the University's Covid-19 policies during a lecture on the State's response to the pandemic.  But because this dispute instead involved "gratuitous information in a logistical e-mail [Burt] sent in his capacity as a professor," the First Amendment provided no refuge.  The court also made short work of Burt's procedural due process claim, rejecting it for failure to pursue state-law remedies

---

[2] The parties agree that Burt has not yet been suspended.

before suing in federal court. *See Laskar v. Peterson*, 771 F.3d 1291, 1300 (11th Cir. 2014).

Though it dismissed the original complaint in its June 21 order, the court gave Burt until July 3 to file an amendment. The order also instructed the clerk to enter judgment if Burt did not amend by that date, "immediately triggering [his] right to appeal."

Though Burt did not amend by that date, the clerk did not enter judgment either. So on July 14—eleven days after the deadline—the district court sua sponte issued another order. Because the time for Burt to amend his complaint had "come and gone," the court instructed the clerk to enter judgment for the defendants, closing the case. The clerk entered the order that same day.

Burt filed his notice of appeal twenty-seven days later, on August 10. The University moved to dismiss, arguing that the appeal was untimely. We carried the motion to dismiss with the case.

## II.

"We review jurisdictional questions and the dismissal of a complaint de novo." *Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins.*, 953 F.3d 707, 719 (11th Cir. 2020) (italics deleted).

## III.

For a notice of appeal to be timely, that notice "must be filed with the district clerk within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A); *see* 28 U.S.C.

§ 2107(a).  In most cases, the deadline is straightforward enough—but not always.  Concerned about the gamesmanship invited by the lack of a final judgment when district courts allow leave to amend in a dismissal order, this Court held in *Schuurman v. Motor Vessel Betty K V* that when a court dismisses a complaint *and* specifies a particular date by which the plaintiff may amend, the dismissal order becomes a final judgment on that date.  798 F.2d 442, 445 (11th Cir. 1986).  And when that order becomes final, it triggers the right to appeal—whether or not the clerk actually files an order dismissing the case.  *See id.*

That holding turns out to matter a lot here.  The district court's initial dismissal order mandated amendment by July 3, but no order was entered dismissing the complaint until July 14.  The University says that under *Schuurman* the district court's order dismissing Burt's complaint became a final judgment on July 3—the deadline the court set to file an amended complaint.  If so, Burt had thirty days after that to appeal.  Time ran out on August 2, making his August 10 notice of appeal eight days too late.

Burt disagrees, pointing to the language of the dismissal order.  Because the court specifically directed the clerk to file a separate dismissal order if Burt failed to amend, he says, that takes the case out of our ordinary rule—meaning that the July 14 judgment, "*not* the expiration of the amendment period," started the appellate clock.  Pl.'s Opp'n to Defs.' Mot. to Dismiss at 2 (emphasis added).  Burt insists that this means his notice of appeal

was timely because it followed twenty-seven days after the July 14 final judgment, "well within the 30 days required." *Id.* at 3.

Absent our *Schuurman* holding, we think that Burt would likely be correct—a final judgment was not entered until July 14, so the clock would start running then. But *Schuurman* offers no exceptions to its deadline-for-amendment rule. Because Burt appealed more than thirty days after the deadline the district court set to amend, his appeal was untimely. *See* 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A).

No doubt, there are reasons to question *Schuurman's* continued validity. For one, it sits uneasily with the Supreme Court's holding twenty-eight years earlier that an order dismissing a complaint with leave to amend was not a final decision. *Jung v. K. & D. Mining Co.*, 356 U.S. 335, 336–37 (1958). Instead, the Court said, "another order of absolute dismissal" was required before the judgment becomes final. *Id.* at 337 (quotation omitted). But under *Schuurman*, that dismissal order can convert into a final judgment after the fact. We are not the first to observe the tension between our holding and the Supreme Court's. Others, both on and off this Court, have identified the same problem. One special concurrence noted that our *Schuurman* rule "does solve the problem of uncertainty, but it solves it differently than did the Supreme Court in *Jung*." *In re United States*, 844 F.2d 1528, 1538 (11th Cir. 1988) (Kravitch, J., specially concurring); *see also Britt v. DeJoy*, 45 F.4th

790, 793, 797–98 n.9 (4th Cir. 2022) (en banc); *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).[3]

Though the facts of the two cases vary slightly, the serious tension between their approaches perhaps should have caused the *Schuurman* panel to hesitate before creating a different rule. Be that as it may, under our Circuit's prior-panel-precedent rule, "there is never an exception carved out for overlooked or misinterpreted Supreme Court precedent." *United States v. Fritts*, 841 F.3d 937, 942 (11th Cir. 2016). And because *Jung* came decades before *Schuurman*, it is self-evidently not an intervening precedent. *See United States v. Hogan*, 986 F.2d 1364, 1369 (11th Cir. 1993).

Yet another wrinkle has appeared since *Schuurman*—the 2002 amendments to Federal Rule of Civil Procedure 58. As before, the Rule requires as a baseline that judgments be issued in a separate document. *See* Fed. R. Civ. P. 58(a). But to offer certainty about the timeline for appeal, the amended Rule adds that if no

---

[3] While the circuits are divided on whether a district court dismissal granting leave to amend is a final appealable order, *Schuurman* is a minority view. *See, e.g.*, *Richards v. Dunne*, 325 F.2d 155, 156 (1st Cir. 1963); *Festa v. Loc. 3 Int'l Bhd. of Elec. Workers*, 905 F.2d 35, 36–37 (2d Cir. 1990); *Weber v. McGrogan*, 939 F.3d 232, 239–40 (3d Cir. 2019); *Britt*, 45 F.4th at 797–98 n.9; *Wallace v. County of Comal*, 400 F.3d 284, 291 (5th Cir. 2005); *Azar v. Conley,* 480 F.2d 220, 223 (6th Cir. 1973); *Otis v. City of Chicago*, 29 F.3d 1159, 1166 (7th Cir. 1994) (en banc); *Sapp v. City of Brooklyn Park*, 825 F.3d 931, 935 (8th Cir. 2016); *WMX Techs.*, 104 F.3d at 1136; *Landmark Land Co. of Okla., Inc. v. Buchanan*, 874 F.2d 717, 720 (10th Cir. 1989), *abrogated on other grounds by Fed. Lands Legal Consortium ex rel. Robart Est. v. United States*, 195 F.3d 1190 (10th Cir. 1999); *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1254, 1257 (D.C. Cir. 2020).

separate order is docketed, a final judgment is officially entered 150 days after a decision appears on a district court's docket. *See* 2002 Advisory Committee Notes on Rule 58; Fed. R. Civ. P. 58(c)(2)(B).[4] So after 150 days the ordinary thirty-day deadline to appeal is triggered. *See* 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A); *Weber v. McGrogan*, 939 F.3d 232, 241 (3d Cir. 2019).

The 2002 amendments thus addressed the very mischief that the Court in *Schuurman* fretted over. *See* 798 F.2d at 445–46. Indeed, the Advisory Committee explained that the amendment was designed "to ensure that appeal time does not linger on indefinitely." 2002 Advisory Committee Notes on Rule 58. And for the sake of completeness, the Note underscored that a "companion amendment of Appellate Rule 4(a)(7) integrates these changes with the time to appeal." *Id.*; *see* Fed. R. App. P. 4(a)(7)(A).

The amendment also carved out several exceptions—a list of discrete circumstances where no separate document is required to render a decision a final judgment. Fed. R. Civ. P. 58(a)(1)–(5).[5] That list includes, to name a few, orders ruling on a motion for attorney's fees under Rule 54, and for a new trial under Rule 59. *See id.* 58(a)(3), (a)(4). Notably absent is any carveout for motions to dismiss. *But cf. Fogade v. ENB Revocable Tr.*, 263 F.3d 1274, 1286 n.9 (11th Cir. 2001) ("Under our circuit law there is one

---

[4] Following the 2002 amendments, this change was reflected in Rule 58(b)(2)(B). *See* 2002 Advisory Committee Notes on Rule 58.

[5] We note that this change was set out in Rule 58(a)(1)(A)–(E) after the 2002 amendments. *See* 2002 Advisory Committee Notes on Rule 58.

circumstance in which a Rule 58 separate judgment is not required to start the running of the time for appeal." (citing *Schuurman*, 798 F.2d at 445)).   Nor do textual clues hint that the Rule's list is illustrative rather than exhaustive; the word "including" is not there, which generally "makes clear that the authorization is not limited to the specified remedies there mentioned." *West v. Gibson*, 527 U.S. 212, 217 (1999).

Still, even if the amendments to Rule 58 undermine *Schuurman*'s rationale, our post-2002 cases applying that decision have reaffirmed it as binding. *See, e.g.*, *Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins.*, 953 F.3d 707, 719–20 (11th Cir. 2020).  So here too our precedent remains firm unless we change it or the Supreme Court overrules it.  *See United States v. Sneed*, 600 F.3d 1326, 1332 (11th Cir. 2010).  Because neither has yet occurred, we again enforce *Schuurman*'s rule, and dismiss Burt's appeal as untimely.

⋆      ⋆      ⋆

First Amendment cases often get serious attention, and rightly so.  But civil procedure, though perhaps less glamorous, defines the rules of the road.  We **DISMISS** Burt's suit on the ground that his notice of appeal was untimely.